No. 16,426.

DUNKLEE ET AL. *v.* KETTERING.
(225 P. [2d] 853)

Decided November 13, 1950.   Rehearing denied January 2, 1951.

Mr. PHILIP HORNBEIN, Mr. PHILIP HORNBEIN, JR., for plaintiffs in error.

Miss MARY C. GRIFFITH, for defendant in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

IN this proceeding, we are called upon to interpret the

following clause contained in the will of Harriet F. Dunklee, deceased:

"I give, devise and bequeath all the rest, residue and remainder of my estate to my friend C. E. Kettering in trust nevertheless for the following purposes:

"1. Upon my death, provided Dr. George K. Dunklee of San Luis Obispo, California, is then living, that said trustee pay the entire income of my estate to him during his lifetime. I further authorize my said trustee to use as much of the principal of my estate, in addition to said income, as may be necessary to provide him with the necessities of life."

Specifically, the question is, What is meant by the clause "as may be necessary?" It is the contention of the trustee, which was sustained by the trial court, that the beneficiary is entitled, in addition to the income of the trust estate, to monthly payments out of principal, regardless of whether he needs such funds for the necessities of life, and that the payment of $175.00 per month, fixed by the trustee, is a reasonable amount for such purpose.

At the trial, counsel for defendants George M. Dunklee and Patricia E. Dunklee made the following offer of proof: "Mr. Hornbein: I would prove by the witness, George M. Dunklee, that George K. Dunklee is presently married to his fourth wife. That he is a practicing physician in San Luis Obispo, California, engaged in full-time, actual practice of medicine and surgery. That he is the owner of the San Luis Clinic, which is located in San Luis Obispo, California, and that said clinic is a thriving institution with many assets, and which provides the said Dr. George K. Dunklee with a large income in addition to the income which he makes as a practicing physician; that the approximate cost of the clinic was $75,000; that it is excellently and completely furnished with excellent equipment for the practice of obstetrics, pediatrics, surgery, medicine and radiology; that the clinic contains a completely equipped laboratory

with two technicians; that there are ten or twelve employees of the said clinic (including a nursery), technicians, bookkeepers, secretaries, caretakers, etc. That the approximate monthly gross income from said clinic is Twelve to Sixteen Thousand Dollars; that the overhead of such clinic is approximately forty per cent of the monthly gross income; in other words, the net income, we offer to prove, which George K. Dunklee derives from the operation of this clinic is sixty per cent of the Twelve to Sixteen Thousand Dollars—I better reduce that to a specific figure. In other words, we offer to prove that the net income derived from this clinic, per month, is $7200. We offer to prove Dr. George K. Dunklee drives two new automobiles, including a 1949 Cadillac sedan; that he lives in a lavishly furnished home which cost $25,000 to build in 1941, and which has furnishings in the amount of about $25,000. We further offer to prove that Dr. George K. Dunklee owns real estate in San Luis Obispo, known as 1130 Garden Street, which property is situated on a main block of San Luis Obispo, just behind the Bank of America Building; that said Dr. George K. Dunklee derives a substantial income from his ownership of this property. That is our offer of proof."

The trustee, while denying generally the truth of the statements contained in the offer of proof, objected to such offer "on the ground it is entirely immaterial to the issues in this case." The trial court sustained the trustee's objection, "not on the ground of disputed fact, but on the ground of materiality," and entered judgment in favor of the trustee. Plaintiffs in error, being the children of the beneficiary, and grandchildren of the testatrix, bring the judgment here for review by writ of error.

The contention of the trustee, as we are convinced, ignores the phrase, "as may be necessary," and interprets the will as if it had said "in addition to said income, I direct my said trustee to provide him with the necessi-

ties of life out of the principal of my estate," and he overlooks the fact that the phrase "necessities of life" is in terms qualified by the clause "as may be necessary." The offer of proof and stipulation of the parties clearly show that Dr. Dunklee's financial circumstances are such that it was not necessary, as a matter of fact, for the trustee to furnish him with the necessities of life. If the testatrix had intended to give beneficiary in addition to the income, an amount from the principal sufficient to provide him with the necessities of life, she selected an unusual and awkward way of saying so. It would have been sufficient to say "upon my death, provided Dr. George K. Dunklee * * * is then living, that said trustee pay the entire income of my estate to him during his lifetime, and a further sum from the principal of my estate to be fixed by said trustee with which to provide him with the necessities of life."

Instead of directing the trustee to pay the beneficiary a sum to cover such necessities, she merely "authorized" him to "provide him with the necessities of life" "as may be necessary."

■ In discussing the meaning of the word "authorized," the author, in 7 C.J.S., at page 1294, states: "Ordinarily it is said to be permissive merely, not being on its face mandatory, but being given its natural significance of a grant of power rather than an imposition of a duty, and implying either a discretionary or permissive power." This definition was approved in *Brown v. Mead,* 121 Conn. 1, 183 Atl. 27. In the instant case there were two matters left to the discretion of the trustee: (1) Was it necessary under the prevailing circumstances to furnish the beneficiary with such "necessities of life," and if so, (2) How much should be taken from the principal for such purpose.

The language used by the testatrix seems to us to be clear, understandable and unambiguous, and that she intended that Dr. Dunklee was to receive only the income from her estate unless it became necessary to use

the principal to provide him with the necessities of life. Other courts have reached like conclusions in construing strikingly similar provisions to those here presented. We mention but a few of such decisions.

The will under consideration in, *In the Matter of Martin*, 269 N. Y. 305, 199 N.E. 491, provided that the trustee " * * * pay over to my cousin, * * * the net income * * * [of the trust] in quarter-yearly installments, and such part of the principal thereof as she may require for her care, support and comfort, during her natural life." The court in interpreting the above clause observed: "The primary question in this class of cases always is, does the will constitute an absolute gift of support and maintenance which it makes a charge upon the income from the estate and upon principal? If so, then the private income of the beneficiary cannot be considered. If, however, the gift is of income coupled with a provision that the principal may be invaded in case of need, the private income of the beneficiary must be considered, in determining whether such need exists.

"We have reached the conclusion that Margaret C. McDonnell, the respondent, is entitled to have applied for her care, support and comfort a portion of the principal of the trust fund only in the event that the income from the trust fund supplemented by her independent income shall be insufficient to provide for her proper care, support and comfort."

The supreme court of Pennsylvania in *Seacrist Estate*, 362 Pa. 190, 66 A. (2d) 836, had before it a will providing that in the event any of the sons of the testator became disabled or incapacitated, "the trustees may pay from the principal * * * such sum or sums, as in the opinion of the trustee should be necessary to support such disabled or incapacitated son or sons. * * * " That court adopted the ruling of the trial court that: "We hold that it was the intention of the testator, as expressed in the codicil, that the petitioner is not entitled to any advancements out of the principal of trust for his support

until he, in good faith, and not for the mere purpose of defeating the testator's intention, satisfies the trustee that he is dependent upon such advancements and that his necessities require that they be made for that purpose. To know the quality and quantity of petitioner's private estate becomes very material in order to determine his good faith and his necessities * * *."

The will considered in *Board of Visitors, etc. v. Safe Deposit and Trust Co.,* 186 Md. 89, 46 A. (2d) 280, provided: " * * * and if she needs any of the corpus of this trust estate for living purposes, I hereby request and empower my said trustees, or their successors, to pay to my said wife, Edwina Harley, such sums from said corpus for living purposes as to their judgment may seem best."

The court held that the above provision was not an absolute gift, but one conditioned upon need, and that in determining such question the circumstances and income of the beneficiary should be taken into consideration, and further stated: "In the case at bar, we think that while the testator manifested a primary concern for the welfare of his widow, *Burt v. Gill,* 89 Md. 145, 151, 42 A. 968, 43 A. 177, he has also shown a solicitude for the conservation of the trust assets. * * * The use of corpus was restricted by the condition 'if she needs any of the corpus of this trust estate for living expenses'; the power to invade corpus was only conferred because 'it seems to me she is not too amply provided for.' We think the latter expression refers to her total resources, not merely to the trust estate. He was fully aware of her separate estate and resources, and by placing $40,000 worth of investments in their joint names, he amplified her absolute estate to that extent, although not required to do so under the terms of the antenuptial agreement. The choice of a spendthrift trust of his residuary estate was deliberate and for her own protection against emergency, and particularly against the hazards of investment losses that were so prevalent at the time the will was

executed, in December, 1932. The trustees, of course, have no control over the management or use of her separate estate; it is only by conserving the trust corpus for possible future needs that the testator's purpose can be given its full effect.

"Differing from the chancellor below, we hold that the beneficiary has not made out such a case of need for living expenses as to justify invasion of the corpus of the trust estate, while she has ample independent means from which those needs can be met."

A will involved in the case of *Bridgeport-City Trust Co. v. Beach*, 119 Conn. 131, 174 Atl. 308, contained a provision wherein the trustee was directed to pay over the income from the trust to the son of the testatrix, and "if it shall be necessary for the comfortable support and maintenance of my said son, to use such portion of the principal as may be necessary." It was shown, as in the instant case, that the beneficiary had other income sufficient to supply his necessities, and the court concluded that the beneficiary was not entitled to the funds from the trust fund, saying:

"Her purpose would be defeated if he were to receive his entire support from the trust which she provided, leaving him at liberty to improvidently disperse the income received from other sources. Moreover, the amount he is entitled to receive from this trust is limited to that which is 'necessary for his comfortable support.' This imports an actual need, a situation in which the contribution prescribed is required in order that such support may be obtained. If he had other income adequate to that end, no such contribution would be necessary; if such other income is only partially sufficient, the need which the trust contemplates is only such amount as will supply the deficiency. *Hull v. Holloway*, 58 Conn. 210, 217, 20 Atl. 445. The payments are to be proportionate to the extent of the necessity. *Hull v. Culver*, 34 Conn. 403. In determining the amounts of the succes-

sive payments, the trustee should consider and reasonably take into account the income of the beneficiary from other sources."

The following clause of a will was interpreted in *Hull v. Holloway*, 58 Conn. 210, 20 Atl. 445: "I direct that said trustee shall from time to time pay and transfer and convey to my said husband, for his use and benefit, so much of the income and principal of the above-named property as my said husband may require for his own personal use, * * *."

The husband there claimed, as does Dr. Dunklee here, that he was entitled to full maintenance and support out of the trust estate from both principal and income, and wholly regardless of other income which he may have from time to time. In disposing of such contention, the court there said:

"The testatrix did not intend that her trustee should pay over to her husband either income or principal, unless an emergency arose which demanded them for his personal support, and if such a crisis in his affairs should arise, then she gave her trustee full power to exhaust the entire trust fund, if necessary, in providing for his personal support and maintenance.

"The remarks of Loomis, J., in giving the opinion of this court in the late case of *Peckham v. Lego*, 57 Conn. 555, [19 Atl. 392], are applicable here: 'The language necessarily implies a consciousness on the part of the testatrix that she had given only a life estate; but it occurs to her that the income may be so limited and their circumstances so reduced that they may lack the means of comfortable support, and she adds the clause under consideration to meet such emergency; but this clause was never intended to sweep away the life estate. It was only to be called into play by an emergency — by the *needs* of her beneficiaries. The right to resort to the principal was founded on necessity and restricted by necessity. If it should not be necessary it is all a mere

life estate; if it is, then the restriction is that all except the necessary portion so taken remains a mere life estate.'

"Holloway is presumably self-supporting and possibly possessed of property far in excess of the entire trust estate. So long as he is able to support himself by his own exertions, or has property available for his support, the trustee has no right to pay over to him, on his demand or otherwise, any·portion of the income or principal of the trust fund."

In *Stempel v. Middletown Trust Co.*, 127 Conn. 206, 15 A. (2d) 305, the court, in construing a will containing language very similar to that in the Dunklee will, said:

"That in determining the amount of net income to be expended for Mary's support in any calendar year after 1938, her personal estate and income from sources other than by the provisions in her favor in the will must be taken into account, is indicated by the context of the will and is supported by authority. The provision is that the trustees shall expend for Mary 'so much * * * as is necessary * * * to provide for [her] comfortable support'. The intent so expressed limits the payments to those required for such support by reason of her own inability to provide it. In so far as she receives from some other source personal estate which enables her to make such provision, the necessity essential to taking under the will disappears. Accordingly her personal estate, her share of accrued past intestate surplus income, as well as intestate surplus income currently received by her, are to be taken into account by the trustees in future payments to her."

■ It is our conclusion that the testatrix did not, by the provision of the will here considered, intend to make an absolute bequest of any portion of the corpus of the trust estate, but that such gift, on the contrary, was conditioned upon need, and in the absence of such need the trustee is unauthorized to invade the principal of said

trust estate to provide the beneficiary with such necessities.

The judgment is reversed.

MR. JUSTICE JACKSON concurs in the result.

MR. CHIEF JUSTICE HILLIARD dissents.