No. 46,384

GERMAINE SCHAUF, *Appellant,* v. MARIE THOMAS and EVELYN JACOBS, *Appellees.*

(498 P. 2d 256)

Opinion filed June 10, 1972.

*M. John Carpenter,* of Great Bend, argued the cause, and *Larry E. Keenan,* of Great Bend, and the firm of Keenan and Keenan, of Great Bend, were with him on the brief for the appellant.

*Robert L. Bates,* of Great Bend, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by the life beneficiary of a testamentary trust to recover the accumulated undistributed income held by the trustee. The district court found generally against the life beneficiary and appeal has been duly perfected.

The primary question concerns the interpretation of the testatrix' will.

The facts are not in dispute and have been stipulated.

On January 9, 1950, Michael P. Schauf died testate leaving as his heirs, his widow, Mary K. Schauf, and three daughters, the plaintiff and defendants herein. His will dated November 3, 1936, left his property to his wife for life with the remainder to his children. His widow elected to take under the law.

The inventory and appraisement in his estate shows that he owned an undivided one-half interest in 720 acres of land in Barton County, Kansas, 160 acres of which were under oil production at the time of his death (the Southeast Quarter of Sec. 1, Twp. 16, Rge. 12) and a house in Hoisington, Kansas.

By quit claim deeds dated February 24, 1950, the three daughters of the decedent conveyed to their mother, Mary K. Schauf, all of their interest in all of the real estate owned by the decedent.

By warranty deeds dated December 8, 1953, Mary K. Schauf made the following conveyances of Barton County land:

To Evelyn Jacobs and her husband, as joint tenants, a life estate with the remainder to her children in the South Half of Southwest Quarter of Sec. 1, Twp. 16, Rge. 12, with the grantor reserving the minerals.

To Marie Thomas and her husband, as joint tenants, a life estate with the remainder to her children in the South Half of Southwest Quarter of Sec. 2, Twp. 18, Rge. 11, with the grantor reserving the minerals.

To Germaine J. Schauf (appellant) a life estate with the remainder to *Evelyn Schauf Jacobs or her children,* an undivided one-half interest in the Northwest Quarter of Sec. 1, Twp. 16, Rge. 12, with the grantor reserving the minerals.

Also, on December 8, 1953, by royalty instruments, Mary K. Schauf conveyed to each of her three daughters an undivided one-sixth royalty interest for twenty years and as long thereafter as oil or gas is produced in the Northwest Quarter and the Southwest Quarter of Sec. 1, Twp. 16, Rge. 12, and the North Half of Northwest Quarter of Sec. 3, and the Southwest Quarter of Sec. 2, all in Twp. 18, Rge. 11, Barton County, Kansas.

On July 24, 1958, Mary K. Schauf died testate at Hoisington, Kansas, leaving a will dated February 17, 1954, which was probated. The decedent's heirs were her three adult daughters, the parties to this litigation.

Paragraph Third of the decedent's will provided:

"THIRD: I hereby make, constitute and appoint my brother, Frank Ney, of Hoisington, Kansas, as testamentary guardian of the person and estate of my daughter, Germaine J. Schauf, for the term of her natural life, with all the power and authority conferred by law upon testamentary guardians, and direct that he shall not be required to give bond. In the event of the death, incapacity or failure of the said Frank Ney to act as such testamentary guardian, I hereby appoint my daughters, Evelyn Schauf Jacobs and Marie Schauf Thomas, as testamentary guardians of my said daughter, Germaine."

Among the property devised was an undivided one-half interest in the Northwest Quarter of Sec. 1, Twp. 16, Rge. 12, Barton County, Kansas, excepting minerals, to the trustee "as testamentary guardian of my daughter, Germaine J. Schauf, for and during her natural lifetime," with the remainder to Evelyn Schauf Jacobs and her children. This is the other one-half of the land in which a life estate was conveyed to the appellant by her mother on December 8, 1953.

The decedent also devised an undivided one-half interest in the North Half of Northwest Quarter of Sec. 3, Twp. 18, Rge. 11, Barton County, Kansas, excepting minerals, to the trustee "as testamentary guardian of my daughter, Germaine J. Schauf, for and during her natural lifetime," with the remainder to Marie Schauf Thomas and her children.

The decedent also devised an undivided one-half interest in the North Half of Northwest Quarter of Sec. 3, Twp. 18, Rge. 11, and the North Half of Southwest Quarter of Sec. 2, Twp. 18, Rge. 11, Barton County, Kansas, except minerals, to Marie Schauf Thomas and her husband, Wm. A. Thomas, as joint tenants with the right of survivorship for and during their natural lifetimes with the remainder to the children of Marie Schauf Thomas, share and share alike. She also devised the Southwest Quarter and the North Half of Southwest Quarter of Sec. 1, Twp. 16, Rge. 12, Barton County, Kansas, except minerals, to Evelyn Schauf Jacobs and her husband, Lawrence E. Jacobs, as joint tenants with the right of survivorship for and during their natural lifetimes, with the remainder to the children of Evelyn Schauf Jacobs, share and share alike.

The decedent also devised her interest in the minerals under the following Barton County, Kansas, land: Northwest Quarter, North Half of Southwest Quarter and Southeast Quarter of Sec. 1, Twp. 16, Rge. 12; and North Half of Northwest Quarter of Sec. 3, and the North Half of Southwest Quarter of Sec. 2, all in Twp. 18, Rge. 11, one-third each to "Frank Ney, as testamentary guardian of my daughter, Germaine J. Schauf" and to the appellees, Marie Thomas and Evelyn Jacobs, for a term of twenty years from the date of her death and as long thereafter as production continues. She directed that the life tenant of each respective piece of land devised in the will "shall have full authority to execute oil and gas leases covering the land in which each has a life interest, said leases to be binding upon the remaindermen."

In addition, the decedent bequeathed to Frank Ney the sum of $9,000 as testamentary guardian of Germaine J. Schauf, and her automobile, residence, furniture and fixtures, as testamentary guardian for Germaine J. Schauf "for and during her natural lifetime" with the remainder to Evelyn Schauf Jacobs and Marie Schauf Thomas, one-half to each, and in the event either or both do not survive Germaine J. Schauf, to the children of such deceased daughter, share and share alike. A one-third share of the residue of the decedent's estate was bequeathed and devised to each of her three daughters, except that Germaine's share was left to Frank Ney as testamentary guardian for Germaine. In the event Germaine did not survive the decedent she devised her share of the residue

to her other two daughters with the remainder to their respective children, share and share alike.

Paragraph Eleventh of decedent's will states:

"ELEVENTH: I direct that my testamentary guardian above named shall use as much of the *principal* of the trust estate as may be necessary to provide for the care, maintenance and support of my said daughter, Germaine J. Schauf, in comfort and at the approximate standard of living to which she has been accustomed in my lifetime, including hospital and medical care in case of illness or other emergency, and in this connection I direct that my said daughter, Germaine, shall be privileged to choose any doctor she wishes for any medical care she may need or desire. In the event my said daughter should express a desire to have a companion to live with her, it is my wish that my daughters, Evelyn and Marie, shall assist her in choosing such a companion. Upon the death of Germaine, said guardian shall pay the expenses of her funeral and last illness and shall thereafter pay any residue of funds remaining in his hands as such guardian to my daughters, Evelyn Schauf Jacobs and Marie Schauf Thomas, one-half to each. In the event either or both of my said daughters last named shall not survive my daughter, Germaine, then I direct that her share of the residue of said fund shall be paid to the children of such deceased daughter, share and share alike." (Emphasis added.)

The will of Mary K. Schauf was admitted to probate on August 29, 1958. No allegation was made then or at any time that Germaine Schauf was a minor or incompetent, and no guardian ad litem was appointed for her in any proceedings had.

Frank Ney acted as testamentary trustee from the time of the death of Mary K. Schauf until January 1, 1970, at which time Marie Thomas and Evelyn Jacobs were appointed successor trustees.

Five oil and gas leases are producing from which the appellant and appellees receive income, covering various properties heretofore described. There was oil production and oil and gas leases on at least a portion of these properties at the time of the death of Mary K. Schauf.

From the time the trust was opened until 1964 all income from oil and rent was deposited by the trustee to the appellant's account. However, in 1965 the trustee began placing large sums of trust income in the trust account. By January 1, 1970, there was an accumulated trust income over a six-year period of $39,748.13.

Although the will of Mary K. Schauf refers to "testamentary guardians," in the journal entry of final settlement in her estate the court found and ordered that Frank Ney be appointed "testamentary trustee," and that the property was devised and bequeathed to him as trustee. The capacity served by Frank Ney and his successor has been that of trustee.

This action was brought by Germaine Schauf (plaintiff-appellant) against her sisters, Marie Schauf Thomas and Evelyn Schauf Jacobs (defendants-appellees) for their removal as trustees and for recovery of the accumulated income in the testamentary trust created by the decedent. At the hearing in the district court the appellees agreed to resign. This court was advised by counsel in argument that a corporate trustee has been appointed to succeed them. (No point is raised concerning the failure of the corporate trustee to appear as a party herein.)

The appellant in her brief states the use of the words "guardian" and "guardians" in the decedent's will were simply the scrivener's poor choice of words because the beneficiary was neither a minor nor an incompetent. The appellees state in their brief, "It has been agreed that it was the intention of the testatrix to establish a trust rather than a guardianship."

The district court after taking judicial notice of the Barton County probate file entitled "Mary K. Schauf Trust," examined the documents, stipulation, records and probate court file, and after having heard arguments of counsel and being duly advised in the premises found in part as follows:

"I. The will of Mary K. Schauf, deceased, which will creates a testamentary trust, contains no ambiguity making necessary the admission of parol evidence to provide the Court with guidance in construction of the Will.

"II. That the income from oil and gas production from the real estate in the trust has been and should hereafter be treated as trust income.

"III. That it was the intention of the testatrix that the testamentary trustee disburse to the beneficiary, Germaine Schauf, such portions of the income and principal of said trust as said trustee or trustees would deem necessary to provide for the beneficiary under the directions of paragraph eleven (11) of said Will.

"IV. That the trustee or trustees, in administering said trust should be governed by the following standard: The beneficiary, Germaine Schauf, is to be afforded the comforts of life which would have been available to her at the time of creation of said testamentary trust based upon the relative wealth of the Schauf family at that time in comparison to the community at large as that degree of relative wealth would now be applied to the comforts available to one of that degree of wealth at the present time. In administering said trust pursuant to said standard said trustee or trustees may take into consideration funds available to the beneficiary from any other source.

"V. That the current trustees have agreed to resign as trustees effective January 1, 1971, when they make their annual accounting to the Probate Court of Barton County and that the said Probate Court is directed to appoint a corporate trustee to administer said trust."

Appeal has been duly perfected by Germaine Schauf challenging in particular findings numbered III and IV.

The appellees admit in their brief they sought to introduce evidence outside the will to shed light upon the testatrix' intentions and were not permitted to do so in the trial court. They now contend, however, that the trial court was correct in its ruling as indicated by finding No. I.

The appellant contends the trial court erred in failing to find as a matter of law that she was entitled to all of the trust income.

Conspicuous for its absence is the fact that the will of Mary K. Schauf fails to make any *direct* mention of how the trust income is to be handled. This gives rise to the issue in the case.

The question whether extrinsic evidence was competent to show an intention not expressed in the will of a decedent was treated in the case of *In re Estate of Sowder,* 185 Kan. 74, 340 P. 2d 907. The rules applicable to the construction of a will may be summarized as follows:

In determining the force and effect to be given the terms of a will, the court's first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction. Where, from an analysis of the entire instrument, no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and conditions. (*In re Estate of Freshour,* 185 Kan. 434, 438, 345 P. 2d 689, 81 A. L. R. 2d 806, and cases cited therein.)

When a court is called upon to determine the force and effect to be given the terms of a will, the cardinal rule of construction to which all other rules are subordinate is that the intention of the testator as garnered from all parts of the will is to be given effect, and that doubtful or inaccurate expressions in the will shall not overide the obvious intention of the testator. In construing a will the court must put itself as nearly as possible in the situation of the testator when he made the will, and from a consideration of that situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used. (*In re Estate of Freshour,* supra.)

It should be noted extrinsic evidence attempting to show the real intention of the testator under the facts and circumstances must be distinguished from evidence admitted to show the "surrounding facts and circumstances" at the time the will was executed. Such evidence which tends to show the situation of the testator at the time the will was executed, the nature of his business, the extent of his property, his relations with his family or named beneficiaries, may be received if it assists in identifying property or beneficiaries, or to clarify language used in the will, but not to change the will. Even though the will is clear and unequivocal, extrinsic evidence for purposes collateral to the issues of intent is admissible, since the purpose for which such evidence is accepted does not relate to any ambiguity on the issue of the testator's intent. (*In re Estate of Sowder,* supra, and cases cited therein.)

Where there are definite and unambiguous expressions in a will, other expressions that are capable of more than one meaning must be construed, if possible, so as to harmonize them with the plain provisions. To ascertain the intention of the testator and the extent and character of the bequests and devises of his will, all provisions of the will must be read and construed together, and one provision must not be given controlling significance by ignoring other provisions of the will. (*In re Estate of Miller,* 186 Kan. 87, 91, 348 P. 2d 1033, and cases cited therein.)

Turning now to the facts in the instant case the court must place itself as nearly as possible in the position of the testatrix when she executed the will in question. To do so the court must consider the evidence admitted to show the surrounding facts and circumstances.

Her husband had died testate on January 9, 1950, leaving his property to his three daughters, including the appellant, subject to a life estate in the testatrix. As widow she elected to take under the law, and on February 24, 1950, the three daughters conveyed to the testatrix, their mother, all of their interest in the real estate owned by their father. Thereafter, on December 8, 1953, the testatrix conveyed a life estate in three 80-acre tracts of land to her three daughters, with the appellant receiving a life estate in an undivided one-half interest in the Northwest Quarter of Sec. 1, Twp. 16, Rge. 12, Barton County, Kansas. On the same date by royalty instruments the testatrix conveyed an undivided one-half of one-third (one-sixth) interest in certain royalty to each of her

daughters. On the 17th day of February, 1954, just two months later, the testatrix executed the will here in question which left in trust for the appellant the other one-half interest in the Northwest Quarter of Sec. 1, Twp. 16, Rge. 12, and the other one-half of one-third (one-sixth) interest in essentially the same royalty previously conveyed. This would suggest that the testatrix intended the appellant to receive the same rights and income from the one-half interest in the land and royalty devised to her by will, as she had acquired two months earlier by deed and assignment. It would be inconsistent to give the daughter the income from one-half of the property in December and limit her enjoyment of the income on the other half of the property two months later. A reading of the testatrix' will in its entirety suggests that she intended to provide the additional security of the trust for the one unmarried daughter, permitting the principal assets of the trust to be invaded as a hedge against certain necessities which may arise, rather than limiting her to the income as a life tenant.

When the court places itself as nearly as possible in the position of the testatrix at the time she executed the will, a reading of the will discloses an intention by the testatrix to treat her three daughters equally, except for the privilege of the trustee to utilize the remainder interest in the land for the appellant's benefit, if necessary. The law presumes that a testatrix intends to treat her children equally when the meaning of the will is doubtful or obscure. (*Pedroja v. Pedroja,* 152 Kan. 82, 88, 102 P. 2d 1012.)

By paragraph Eleventh in the will the testatrix gave directions to the "testamentary guardian" that he was to use as much of the *principal* of the trust as may be necessary to provide for the care, maintenance and support of the appellant, in comfort and at the approximate standard of living to which she had been accustomed to living. It then states some other purposes for which the trustee is to invade the principal. This provision of the will authorizing an invasion of the principal of the trust assets is clear, and it does not, contrary to the trial court's finding, limit the use of the income from the trust for the purposes therein stated.

Here the appellant makes no claim of necessity to use the principal, but rather contends a proper interpretation of the will would require the trustee to pay her all trust income with the principal to be invaded should any of the necessities set out by the testatrix arise.

The appellees emphasize paragraph Third of the testatrix' will, which they contend is the basic clause creating the trust and spelling out the duties of the trustee. They point out that Frank Ney was appointed "as testamentary guardian of the person and estate of my daughter, Germaine J. Schauf, for the term of her natural life, with all the power and authority conferred by law upon testamentary guardians." The appellees contend the use of the term "guardian" is significant as indicating the intent of the testatrix, since she did use the phrase "with all the power and authority conferred by law upon testamentary guardians."

When the powers and duties of testamentary guardians as set forth in K. S. A. 59-1804 (now K. S. A. 1971 Supp. 59-3019) are considered and read carefully in connection with the provisions set forth in the testatrix' will, viewed as nearly as possible in the position of the testatrix when she executed the will, it is apparent the testatrix' use of the expression "testamentary guardian" in her will was inappropriate. It is apparent the testatrix intended to create a trust. The appellant required no guardian for her person. She also was capable of managing her own business. This is established by the testatrix in making an outright conveyance to the appellant two months before the will was executed, and by the provisions in her will giving the appellant the power, aside from the trust, to execute oil and gas leases covering the land in which she had a life interest, binding the remaindermen to the same as if they had executed the oil and gas leases for and on their own behalf. The testatrix also knew the appellant was at one time the owner of a remainder fee interest in a portion of the property owned by the testatrix, which the appellant had conveyed to her.

In paragraph Fourth the testatrix in her will makes a bequest of $9,000 cash for the trust estate, in paragraph Fifth she gives an undivided one-half interest in a quarter section of farm land; in paragraph Ninth she gives one-third of all oil royalty owned by the testatrix at the time of her death, and in paragraph Tenth she gives the family car, home and furniture to the trust estate. In each instance the grant is to the "testamentary guardian" for Germaine J. Schauf "for . . . her natural lifetime," indicating an intention that the use of the property be for the beneficiary of the trust, rather than to benefit the remaindermen by the accumulation of income. The appellees and their children have already shared equally with the trust.

A similar case is *Elwell v. Stewart,* 110 Kan. 218, 203 Pac. 922. There a daughter died testate and all of her real estate went to the executor named in her will in trust for her mother with the following instructions:

" 'I give, devise and bequeath to Clyde Stewart, of Baldwin City, Kansas, all of my property, real, personal and mixed, whatsoever and wheresoever located, and all property or interest in property or estate to which I may be entitled, in trust however for the use and benefit of my mother, Derinda Elwell, during her natural life, and I do hereby direct my said trustee to sell and dispose of any or all of such said property as he may deem necessary for the care and maintenance of my said mother, in the event that the income from my said estate shall not be sufficient for such purpose. Upon the death of my mother in the event that any property should remain in the hands of my said trustee undisposed of by him, I give, devise and bequeath all of said property or estate to Beulah Helen Stewart and Ethelyn Blondell Stewart the daughters of said Clyde Stewart, as their sole and separate property, share and share alike.' " (p. 219.)

The trustee there argued the purpose was to provide for the mother's care and maintenance, with the trustee to determine what and how much was necessary for that purpose. The court, however, rejected the argument of the trustee and held that where the property is given in trust for life with a right to invade the corpus upon a showing of necessity to effect the purpose of the trust, the beneficiary was entitled to all of the income from the trust even though that income might exceed the actual needs of the beneficiary.

While the court's practical application of stated rules of construction to will cases appearing before it has led to consistent results, the language occasionally used by the court is confusing as to where in a given case the *construction* of a will begins. The word "construction" is often used in connection with the *interpretation* of a will or the application of rules of law to provisions of the will when its force and effect is determined from language used within the will itself. In other words, the intention of the testator is gathered from the language used within the will itself without resort to extrinsic evidence to establish *the testator's intention. Rules of judicial construction* are employed only when the language found in the will is uncertain, indefinite and ambiguous in its terms and the intention of the testator cannot be ascertained from the provisions in the will. Cases clarifying the use of these expressions are: *In re Estate of Porter,* 164 Kan. 92, 187 P. 2d 520, Syl. ¶ 6; *Johnston v. Gibson,* 184 Kan. 109, 334 P. 2d 348; and *In re Estate of Sowder,* supra.

We have little difficulty concluding Mary K. Schauf intended by her will to establish a trust for the benefit of the appellant for the term of her natural life in which the appellant is entitled to a distribution of all of the trust income. In doing so it has been unnecessary to resort to rules of judicial construction. By putting itself as nearly as possible in the situation of the testatrix when she executed the will, the court has been able to determine the purpose of the testratrix and the intention she intended to convey by the language used in the will. Extrinsic evidence to show the intention of the testatrix is unnecessary. The language found in the will is not uncertain, indefinite or ambiguous in its terms.

Although not material in placing an interpretation upon the will here in question (see *In re Estate of Sowder,* supra), it is to be noted for the years 1958 through 1962 the annual accounting forms disclosed in the record were modified to show a trustee's accounting rather than a guardian's accounting, and for the years 1959 through 1964 all income from oil and rent was deposited by the trustee directly to the appellant's account. However, beginning in 1965 the trustee began depositing large sums of trust income to the trust account and each year thereafter paid less of the income to the appellant. By January 1, 1970, there was an accumulated trust income over a six-year period of $39,748.18. It appears from the record this accumulation was occasioned by increased oil production from lands covered by the will.

The rule in *Hitchcock v. Skelly Oil Co.,* 197 Kan. 1, 414 P. 2d 67, has not been asserted by the parties herein, and we deem it to have no application to the facts in this case.

The judgment of the lower court is reversed.