No. 65,630

J. RICHARD GODFREY, Trustee, *Appellee,* v. PEGGY CHANDLEY; an incompetent; and SUE MORAN, Guardian of the Person and Estate of Peggy Chandley, *Appellants,* and W. T. CHANDLEY; FAY C. HOGLE; MARTHA LOU CHANDLEY HADDON; LEE ELLEN HOGLE MORRISON; JANIS ANN HOGLE ROBINSON; and LINDA FAY HOGLE, *Appellees.*

(811 P.2d 1248)

Opinion filed May 24, 1991.

*Paul A. Wolf,* of Brollier, Wolf & Schroeder, of Hugoton, argued the cause, and *Kim R. Schroeder,* of the same firm, was with him on the brief for appellants.

*Stanley E. Antrim,* of Yoxall, Antrim & Yoxall, of Liberal, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This case pertains to the construction of a testamentary trust established by the decedent Jim Chandley. Chandley died in 1986. His will was probated and administered in Stevens County District Court. J. Richard Godfrey was appointed acting trustee in accordance with the terms of the testamentary trust established by Chandley's will.

Chandley devised substantially all of his property to his wife, Peggy Chandley. Under the terms of a testamentary trust, he created a life estate for the benefit of Peggy with the remainder to pass to named heirs. The trust provision in dispute provides that the net income of the trust shall be paid to Peggy "as may be necessary for her support, health and maintenance."

Peggy Chandley resides in a nursing home in Dallas, Texas. She was declared incompetent by a Dallas County probate court, whereupon Sue Ann Walker Moran was appointed guardian for Peggy and her estate.

Peggy claims she is the beneficial owner of the trust income and is entitled to all of the net income necessary for her support, health, and maintenance. In addition, she asserts any income not distributed for her support, health, and maintenance should be held by the trustee for future use should the need arise. Finally, Peggy claims any undistributed income should be paid to her estate upon death.

The remaining defendants are beneficiaries under the decedent's trust, subject to the interests of Peggy. They contend Peggy is entitled only to trust income for support, health, and maintenance expenses which she cannot pay from her own separate income. Upon Peggy's death, the remaindermen claim all undistributed income should be paid into the trust corpus and distributed to them.

J. Richard Godfrey, the trustee, filed this declaratory judgment action in Seward County District Court seeking an interpretation and construction of the testamentary trust. A hearing was held in Seward County District Court on May 11, 1990, wherein the district court judge declined to rule on the admissibility of parol evidence but accepted a proffer of testimony. This proffer indicated that Jim and Peggy Chandley disliked each other's relatives and, therefore, evenly divided their marital assets. The proffered evidence showed that Jim Chandley intended for the trust income to be utilized for Peggy's benefit only when her expenses exceeded the ability to pay from her own income. A proffer of evidence on Peggy's behalf denied the asserted intention of Jim Chandley.

On August 3, 1990, the district court ruled the trust provisions were unambiguous and the proffered testimony inadmissible. The court determined Peggy's income from the marital estate must first be applied to her cost of living, and only if the income became insufficient to pay the reasonable costs of support, health, and maintenance should the trust income be applied to these expenses. Peggy appeals.

I

The first issue we consider is whether Peggy Chandley, the life tenant under the provisions of Jim Chandley's testamentary trust, is entitled to all or a portion of the trust income for her support, health, and maintenance without regard to her personal income.

The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.,* 243 Kan. 130, 133, 754 P.2d 803 (1988). Whether an instrument is ambiguous is a matter of law to be decided by the court. *Mobile Acres, Inc. v. Kurata,* 211 Kan. 833, 839, 508 P.2d 889 (1973). As a general rule, if the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction. *In re Living Trust of Huxtable,* 243 Kan. 531, 534, 757 P.2d 1262 (1988).

The primary function of a court in the interpretation of a will is to ascertain the testator's intent as derived from the four corners

of the will. *Drach v. Ely,* 237 Kan. 654, 656, 703 P.2d 746 (1985). Where an ambiguity exists in the written instrument, parol evidence is admissible to ascertain the meaning of the words used. *In re Living Trust of Huxtable,* 243 Kan. at 533.

Let us now turn to the trust provisions at issue. Paragraph VI of Jim Chandley's will provides:

"I give, devise, and bequeath the rest and residue of my estate at the time of final settlement to J. RICHARD GODFREY AND HIS SUCCESSORS, in trust and upon trust, without bond or other security of any kind, to hold and administer the same for the following uses and upon the following terms and conditions, without order or authority from any Court or person.

"A. The trust estate shall be primarily held and administered for the benefit of my wife, PEGGY CHANDLEY, for and during her natural life, with remainder to be converted into cash and the net proceeds divided as hereinafter provided.

"B. The main purpose of the trust is to provide for the support, health and maintenance of my wife, PEGGY CHANDLEY, during her lifetime. The trust estate shall pay, monthly or at such intervals as may be agreed upon by the Trustee and my Wife, during the period of the trust such portion of the net income from the trust as may be necessary for her support, health, and maintenance. There shall be no invasion of principal."

Peggy urges a broad and liberal construction of the trust provisions so that the trustee must pay to Peggy the sums needed or desired by her for support, health, and maintenance. She also contends undistributed trust income should be retained by the trustee to provide for subsequent support and any remaining income upon her death shall be paid to her estate.

The remaindermen assert the words "primarily" and "necessary" are words of limitation which indicate that Jim Chandley intended the trust to pay only those expenses which exceeded Peggy's personal income. The remaindermen argue that, where Peggy's income is available and sufficient to pay her living costs, the expenses are not necessary and, therefore, should not be paid from the trust income.

Whether a trustee can consider the personal income of a trust beneficiary is to be determined from the language of the instrument and surrounding circumstances. See Bogert, Trusts and Trustees § 811, p. 229 (rev. 2d ed. 1981). Where the trust settlor manifests an intention that the trust property be applied to the beneficiary's support only if and to the extent the beneficiary is

in actual need, then the beneficiary is not entitled to support from the trust fund if other sufficient resources are available. See *Dunklee v. Kettering,* 123 Colo. 43, 46, 225 P.2d 853 (1950); *First National Bank of Catawba County v. Edens,* 55 N.C. App. 697, 704, 286 S.E.2d 818 (1982). See generally 2 Scott on Trusts § 128.4 (Fratcher 4th ed. 1987). On the other hand, where a settlor directs the trustee to pay the beneficiary so much as is necessary for support and maintenance, an inference arises that the settlor intended the beneficiary to receive support from the trust estate, regardless of other income. See *Taylor v. Hutchinson,* 17 Ariz. App. 301, 304-05, 497 P.2d 527 (1972); *Estate of Wells v. Sanford, Trustee,* 281 Ark. 242, 246-47, 663 S.W.2d 174 (1984); *Hamilton Nat. Bank v. Childers,* 233 Ga. 427, 428, 211 S.E.2d 723 (1975); *In re Coats Trust,* 581 S.W.2d 392, 393-96 (Mo. App. 1979); see Restatement (Second) of Trusts § 128, comment e (1957).

In *Blair v. Blair,* 82 Kan. 464, 108 Pac. 827 (1910), the testator directed his executors to pay to his wife, out of the net proceeds of his business and estate earnings, such amounts necessary for her support and maintenance, and any excess earnings were to be reinvested in the estate. The widow claimed she was entitled to all the net income to use without restraint. This court determined the words "support and maintenance" were used in a broad and liberal manner. The court examined the language of the will and found the testator intended for his wife to have all the income, if necessary, for her support and maintenance but did not provide her with a means to engage in any enterprise or business. 82 Kan. at 467.

The testator in *Dunklee v. Kettering,* 123 Colo. at 44, directed the trustee to pay the entire trust income to her husband and authorized the trustee to use the principal and or income "as may be necessary to provide him with the necessities of life." The court considered evidence which showed that the husband possessed a large income from his practice of medicine and ownership of a medical clinic. 123 Colo. at 45. The Colorado court then determined that the phrase "necessities of life" was limited by the term "as may be necessary" and found that in light of the beneficiary's financial situation it was not necessary for the trustee

to provide for the beneficiary's necessities of life from the trust corpus. 123 Colo. at 46.

In *First National Bank of Catawba County v. Edens*, 55 N.C. App. 697, an incompetent son was the beneficiary of his mother's testamentary trust. The beneficiary had already received a share of his father's estate, and, under the provisions of the beneficiary's mother's trust, the trustee was to use the income and principal, in his discretion, as necessary for the support, maintenance, and comfort of the beneficiary. The trust specifically directed the trustee to consider the beneficiary's needs and the amount of income received from the father's estate. 55 N.C. App. at 698. The North Carolina court found no error in the trustee's consideration of the beneficiary's personal income because the trust directed the trustee to pay in the trustee's discretion, even if the beneficiary's personal income was insufficient to cover his living expenses. 55 N.C. App. at 701-02.

In *Estate of Wells v. Sanford, Trustee*, 281 Ark. 242, a son bequeathed his entire estate for the benefit of his incompetent mother. The trust directed the trustee to "expend for the support and maintenance of the [mother] such sums as may be necessary as long as she lives." The trust beneficiary owned 109 acres of realty and had a life interest in 80 acres; however, she also owed $23,749.74 to the nursing home where she resided. 281 Ark. at 244-45. A petition was filed to sell the trust assets to provide for the beneficiary's support, but the petition was denied by the trial court, which found the beneficiary must first apply her own income to her support. The Arkansas Supreme Court studied the language of the trust instrument and determined the words "necessary for support" meant the trust was intended to be used to support the beneficiary, regardless of the beneficiary's own assets. 281 Ark. at 246-47.

The same conclusion was reached in *Hamilton Nat. Bank v. Childers*, 233 Ga. 427, wherein the testator directed the trustee to pay, at his discretion, the trust proceeds to his wife necessary for her to maintain the same standard of living to which she was accustomed. The Georgia court found it is ordinarily presumed the testator intended the beneficiary to be supported by the trust fund so that the beneficiary's other income and assets were not to be considered. Thus, the trustee's discretionary power did not

include authorization to consider the beneficiary's private income. 233 Ga. at 428.

In the present case, we examine the language of the testamentary trust to ascertain Jim Chandley's intent in establishing the trust. Subsection A of paragraph VI states that the trust estate shall be primarily held and administered for the benefit of Peggy Chandley, for life, with the remainder divided among named remaindermen. Subsection B states the purpose of the trust is to provide for the support, health, and maintenance of Peggy Chandley during her lifetime. The trust provision then directs that the trustee *shall* pay such portion of the net income from the trust as may be necessary for Peggy's support, health, and maintenance.

In *Schauf v. Thomas*, 209 Kan. 592, 498 P.2d 256 (1972), the beneficiary of a testamentary trust for support and maintenance brought an action to recover accumulated income in a trust. The trust directed the trustee to use as much of the principal of the estate as may be necessary to provide for the care, maintenance, and support of the plaintiff. For a time, all the trust income was paid into plaintiff's account; however, after a while the trustee paid most of the trust income into the trust account. The trial court found the will was not ambiguous and, therefore, parol evidence was not necessary. The trial court ruled the testatrix intended the trustee to disburse to the plaintiff the income and principal necessary to provide the plaintiff with the comforts available when the trust was created, and found the trustee could consider funds available to the plaintiff from other sources. 209 Kan. at 597.

Upon review, this court ruled that extrinsic evidence which showed the testatrix's situation when the will was executed, the nature of the business, the extent of the property, and the relationship with the beneficiaries was admissible to clarify the language of the will, but not to change the will. 209 Kan. at 599. The court then considered evidence surrounding the establishment of the trust estate and found the testatrix intended to treat all daughters equally, with the remainder interest in certain land to be used for the plaintiff's benefit. 209 Kan. at 600. By placing itself as nearly as possible in the situation of the testatrix when she executed the will, this court determined the testatrix intended

the plaintiff to be entitled to all the trust income and as much of the principal as necessary for her support, health, and maintenance. 209 Kan. at 603.

The trial court in the present case stated the will was unambiguous and then construed the testamentary trust provision to give effect to the testator's intent by relying upon proffered testimony that Jim and Peggy divided their marital assets to prevent each other's relatives from benefiting. In reaching the conclusion that Peggy's personal income must be depleted before the trust income could be paid for her support, health, and maintenance costs, the district court stated: "To achieve the aim of the parties manifested by earlier division of the marital estate in presumably equal shares and to assure support for both marital partners I find the disputed language to require payment from the trust for *necessary* support." Thus, the trial court considered some of the proffered testimony to ascertain the testator's intent.

Jim Chandley's intent can be ascertained solely from the language of the instrument. It is unambiguous, as the trial court determined. Therefore, the trial court should not have used the proffered evidence in construing the trust provisions. We hold the trustee shall pay Peggy support, health, and maintenance for the period of her natural life irrespective of her individual income. The testator obviously intended to provide maintenance for his wife for her life. His provision is limited only by what is necessary. In other words, it cannot be used to provide nonessential items.

Now let us consider the disposition of the undistributed income. Whether it belongs to the estate of the life beneficiary or to the remaindermen depends upon the intention of the testator as manifested in the will or other trust instrument. 51 Am. Jur. 2d, Life Tenants and Remaindermen § 108.

In *Calkin v. Wallace,* 160 Kan. 760, 165 P.2d 224 (1946), this court considered whether a trust beneficiary's estate or the surviving trust beneficiaries were entitled to payment of undistributed trust income. We found the trust was created for the sole benefit of the named beneficiaries during their natural lives and did not state any portion of the income should be paid to the beneficiary's estate. The court concluded the testator did not intend for the income to be paid to the beneficiary's estate. 160 Kan. at 765.

We reach a similar conclusion in this case. The trust does not state the undistributed income should be paid to Peggy's estate, but provides specific direction for the sale of all real estate and personal property owned by the trust estate and remaining upon Peggy's death. In addition, the will explicitly states the testator's intent to exclude everyone not designated as a trust beneficiary. Therefore, allowing the trust income to pass to Peggy's estate would violate the intention of Jim's will. Thus, we reject Peggy's claim for such a construction of Jim's trust and will, but hold that the unused trust income shall be accumulated in the trust during Peggy's lifetime to assure adequate resources for her lifetime maintenance. At her death, the unused income shall be added to the trust principal and distributed to the remaindermen.

## II

Peggy next contends Seward County District Court was an improper venue for an action to interpret the testamentary trust. She asserts venue was proper in Stevens County District Court, where the will was probated and the trustee appointed. For support, she relies upon K.S.A. 59-1601, which requires a testamentary trustee to file an inventory and make accountings of trust property in the district court where the will was admitted to probate.

Peggy concedes Stevens and Seward Counties are in the same judicial district with the same district judges. She contends the trustee filed this action in Seward County for his own convenience and without concern for the beneficiaries. Finally, Peggy alleges it is a violation of the probate code to allow the trustee to choose the venue for this type of action.

K.S.A. 1990 Supp. 60-605 provides: "An action against a nonresident of this state . . . other than an action for which venue is otherwise specifically prescribed by law, may be brought in the county in which: (1) The plaintiff resides . . . ."

In this case Peggy is a resident of Dallas, Texas, and the trustee is a resident of Seward County, Kansas. Thus, the trustee determined K.S.A. 1990 Supp. 60-605 applied and filed this action in Seward County. The district court ruled venue was in Seward County. We disagree. Chapter 59 of the Kansas Statutes Annotated establishes the venue of the proceeding to probate a will

creating a testamentary trust and where the accountings shall be filed. We hold that the venue for actions to construe such a trust is in the county where the will is filed for probate. We order that this case be transferred to Stevens County District Court and that an order be entered therein in this case consistent with this opinion.

The judgment of the district court is reversed and this case is remanded for further proceedings.