In the Matter of the ESTATE OF
Marjorie S. SIMS, Deceased.

Neil MITCHELL, Appellant
and Cross–Appellee,

v.

Lynda WOOD, Appellee and
Cross–Appellant.

No. 950734–CA.

Court of Appeals of Utah.

May 16, 1996.

John E. Gates, Kim R. Wilson, and David L. Pinkston, Salt Lake City, for Appellant and Cross-Appellee.

John L. McCoy, Salt Lake City, for Appellee and Cross-appellant.

Before DAVIS, BENCH and JACKSON, JJ.

## OPINION

BENCH, Judge:

Neil Mitchell appeals the trial court's entry of summary judgment in favor of Marjorie Sims's estate. Lynda Wood cross-appeals. We affirm in part and reverse in part.

## BACKGROUND

Grant and Marjorie Sims enjoyed a long married life together. Mr. Sims died in 1991, leaving a will which provided for the creation of a bypass trust and designated Mrs. Sims the personal representative of his estate. He also named Mrs. Sims and Mitchell co-trustees of the bypass trust, which was to be funded from the residue of his estate. The will provided that trust income was to be paid to Mrs. Sims, without condition. The will further provided that the trustees were required to distribute to Mrs. Sims as much of the principal as necessary for her proper health, support, and maintenance. After Mrs. Sims's death, the residue of the trust's corpus was to be distributed to other beneficiaries, including both Mitchell and Wood.

During the time that Mrs. Sims served as personal representative, she never funded the trust. Instead, she withdrew $96,642.55 directly from the estate checking account to pay for her personal living and medical expenses. Mrs. Sims received an additional $52,875.40 from the estate, derived from a $50,000 certificate of deposit plus interest. Finally, Mrs. Sims received a $12,445.86 personal injury settlement for injuries Mr. Sims had sustained before his death.

Mrs. Sims died in 1993. Her will named Wood as the personal representative of her estate. Mitchell, as co-trustee and a remainder person of Mr. Sims's estate, filed a claim against Mrs. Sims's estate for the monies that Mrs. Sims had removed from Mr. Sims's estate. Wood conceded that $48,100 from the certificate of deposit in Mr. Sims's name had been wrongfully taken from Mr. Sims's estate.[1] Mitchell moved for summary judgment for return of all the funds removed from Mr. Sims's estate. Wood also filed for summary judgment seeking to disallow Mitchell's claim.

The trial court granted in part and denied in part both parties' motions for summary judgment. The trial court found that Mrs. Sims had failed to fund the trust, but that she was nonetheless entitled to the $96,642.55 from the estate checking account. The trial court determined that the funds were used for her necessary support and maintenance and that there was therefore no damage to Mr. Sims's estate. Regarding the certificate of deposit, the trial court found that $48,100 was undisputedly owed by Mrs. Sims's estate and ordered that amount paid

---

1. Wood argued that Mrs. Sims's estate was entitled to the $2875.40 in interest and an additional $1900 as personal representative fees.

to Mr. Sims's estate plus 10% interest. The trial court also allowed Mrs. Sims's estate to retain the $2875.40 in interest income from the certificate of deposit and the $1900 claimed as personal representative fees. Finally, the trial court found that Mrs. Sims's acceptance of the $12,445.86 personal injury settlement was an improper diversion of the money from Mr. Sims's estate and awarded that amount to Mr. Sims's estate.

Mitchell appeals from the trial court's decision concerning the $96,642.55 that Mrs. Sims withdrew from the estate checking account and the allowance of interest income and personal representative fees from the certificate of deposit. Wood cross-appeals the trial court's summary judgment in favor of Mr. Sims's estate on the personal injury settlement amount and award of interest.

## STANDARD OF REVIEW

█ Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993). Because entitlement to summary judgment is a question of law, we accord no deference to the trial court's resolution of the legal issues presented. *Id.; Ferree v. State*, 784 P.2d 149, 151 (Utah 1989).

## ANALYSIS

### A. Estate Checking Account

█ Mitchell first argues that the trial court erred when it allowed Mrs. Sims's estate to keep the $96,642.55 that Mrs. Sims had drawn from the checking account of Mr. Sims's estate. Mitchell contends that because Mrs. Sims did not fund the trust provided for in Mr. Sims's will, she must return all the money to Mr. Sims's estate. We disagree.

█ Mr. Sims declared in his will that

[t]he Trustees shall distribute to her [Mrs. Sims] without any conditions, all of the income of said trust. The trustees shall also distribute as much of the principal as is necessary for her proper health, support, and maintenance and to maintain her in the standard of living that she enjoyed during my lifetime.

The trial court found that although Mrs. Sims did not fund the trust, she was entitled to the funds since they were used for her support and maintenance. The record reflects that Mrs. Sims spent approximately $76,000 from the estate's checking account on her medical expenses. The balance of the money drawn from the estate's checking account was for Mrs. Sims's living expenses. The accounting report and affidavit of the accountant for Mr. Sims's estate confirm these expenses. Mitchell did not dispute Mrs. Sims's expenses, contending merely that the expense accounting was irrelevant because any money used was "improperly converted from the estate." Because Mitchell did not challenge Mrs. Sims's expenses below, he is precluded from challenging them on appeal. *Jensen v. Bowcut*, 892 P.2d 1053, 1056 (Utah App.)(holding acquiescence to opposing argument before trial court precluded challenge on appeal), *cert. denied*, 899 P.2d 1231 (Utah 1995); *see also Salt Lake City v. Ohms*, 881 P.2d 844, 847 (Utah 1994) (stating court will review only those issues presented below unless exceptional circumstances or plain error are shown).[2]

The language of the will clearly states that Mrs. Sims shall receive distributions from the principal of Mr. Sims's estate "necessary for her proper health, support, and maintenance." Mitchell argues that, in other jurisdictions, the use of "as is necessary" language requires the beneficiaries of a trust to exhaust their own resources before invading trust principal. *See Dunklee v. Kettering*, 123 Colo. 43, 225 P.2d 853, 855–57 (1950). *But see In re Estate of Lindgren*, 268 Mont. 96, 885 P.2d 1280, 1282–83 (1994). We need not address that question because Mr. Sims's

---

2. Mitchell also claims that Wood should be estopped from claiming Mrs. Sims's estate had no liability towards Mr. Sims's estate. Mitchell concedes that estoppel is a new argument but contends that it is not a new issue. However, "[w]e decline to honor such a distinction." *Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 n. 31 (Utah 1993). Consequently, we will not address the estoppel issue.

will does not merely authorize the invasion of the principal for "the necessities of life." *Dunklee*, 225 P.2d at 853. Instead, Mr. Sims's will mandates that Mrs. Sims shall have access to the principal "to maintain her [Mrs. Sims] in the standard of living that she enjoyed during my lifetime." Therefore, we agree with the trial court's determination that "while there was a technical breach of her fiduciary responsibilities to fund the by-pass trust, the breach resulted in no damages and therefore is not actionable."

### B. Certificate of Deposit

■ Mitchell challenges the trial court's award to Mrs. Sims's estate of $1900 in personal representative fees and $2875.40 that Mrs. Sims claimed as interest earned from Mr. Sims's $50,000 certificate of deposit. Mitchell first argues that Mrs. Sims's estate did not properly petition the trial court for the $1900 in claimed personal representative fees pursuant to Utah Code Ann. § 75–3–718(1) (1993). Wood stated in her Memorandum in Response to Mitchell's Motion for Summary Judgment that she deducted from the $50,000 "$1900 as fees for acting as personal representative." We need not decide whether this qualifies as a proper claim pursuant to section 75–3–718(1), since Wood provided no evidence to support the fees after Mitchell challenged them on summary judgment. *See* Utah R. Civ. P. 56(c). Consequently, we reverse that portion of the award.

■ Mitchell also asserts that the trial court improperly awarded Mrs. Sims's estate $2875.40 in claimed interest from the certificate of deposit. Wood argues that the money was interest earned from the certificate of deposit in Mr. Sims's name and that, since Mr. Sims's will declared Mrs. Sims the beneficiary of all income from Mr. Sims's estate, she was entitled to keep the interest earned. Mitchell simply contends that because the trust was not funded, Mrs. Sims did not have the right to keep that money. We disagree. Again, although Mrs. Sims did not fund the trust as Mr. Sims's will directed, Mr. Sims

explicitly stated that Mrs. Sims was to receive the income from Mr. Sims's estate "without condition." Thus, the trial court properly allowed Mrs. Sims's estate to retain the interest from the certificate of deposit.

### C. Settlement Proceeds

■ Wood cross-appeals the trial court's order to return to Mr. Sims's estate the $12,445.86 received from the settlement of Mr. Sims's personal injury claim. Wood argues that since Mrs. Sims claims to have paid a large portion of Mr. Sims's medical expenses, Mrs. Sims could retain the settlement proceeds pursuant to Utah's survival statute. *See* Utah Code Ann. § 78–11–12 (1992). Utah's survival statute provides:

> If prior to judgment or settlement the injured person dies as a result of a cause other than the injury received as a result of the wrongful act or negligence of the wrongdoer, the personal representative or heirs of that person are entitled to receive no more than the out-of-pocket expenses incurred by or on behalf of that injured person as the result of his injury.

Utah Code Ann. § 78–11–12(1)(b) (1992). According to Utah's survival statute, Mrs. Sims could only recover the personal injury settlement in her capacity as personal representative of Mr. Sims's estate. Wood's reliance on *In re Behm's Estate*, 117 Utah 151, 213 P.2d 657 (1950) for the argument that she is entitled to the settlement proceeds is misplaced. *Behm* is a wrongful death case and not a personal injury settlement case. In a wrongful death cause of action, the heirs of the decedent personally hold claims for lost support and other personal losses. *See Haro v. Haro*, 887 P.2d 878, 879 (Utah App. 1994). In a personal injury case, by comparison, the cause of action is owned not by the heirs, but by the injured party. As personal representative of Mr. Sims's estate, Mrs. Sims was therefore authorized to receive the settlement only on behalf of his estate. Mrs. Sims could then present a claim to his estate for out-of-pocket expenses, pursuant to the survival statute. She has never done that.[3]

---

3. Mrs. Sims's estate argues that because she was Mr. Sims's "only surviving intestate heir," she is entitled to the settlement proceeds. However, it

is evident that Mr. Sims did not die intestate. He had a will that designated Mrs. Sims as the personal representative, and devisee of personal

We therefore affirm the trial court's award of the settlement proceeds to Mr. Sims's estate.

We have considered the other issues raised, and we adjudge them to be without merit. Accordingly, we do not address them. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) ("Court need not analyze and address in writing each and every argument, issue or claim raised."), *cert. denied*, —— U.S. ——, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995).

## CONCLUSION

We affirm the order of the trial court except as to the award of $1900 in personal representative fees. That portion of the judgment is reversed. The case is remanded to the trial court for entry of a new judgment consistent with this opinion.

DAVIS, Associate P.J., and JACKSON, J., concur.

property. Thus, she could not take the settle-

