IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,367

CAROL EINSEL,
*Appellant*,

v.

RODNEY EINSEL, individually; NANCY E. HAAS; CHARLENE EINSEL; RODNEY EINSEL, as
Executor of the Estate of Anna Louise Einsel; *et al.*,
*Appellees*.

SYLLABUS BY THE COURT

1.

An appellate court reviews a district court's exercise of powers in a partition
proceeding under an abuse of discretion standard of review. Judicial discretion is abused
if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person
would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*,
if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of
fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a
prerequisite conclusion of law or the exercise of discretion is based.

2.

The interpretation of a journal entry, like the interpretation of all written
instruments, presents a question of law over which an appellate court exercises de novo,
or unlimited, review.

3.

The primary rule in interpreting written instruments is to ascertain the intent of the
parties, and thus, in interpreting an order the primary rule is to ascertain the intent of the

court. As a general rule, if the language of a written instrument is clear and can be carried out as written, the intent of the maker is made clear and there is no room for rules of construction. If the language cannot be carried out as written, rules of construction must be applied. In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms to an absurdity should be avoided. The meaning of a written instrument should always be ascertained by a consideration of all pertinent provisions and never be determined by critical analysis of a single or isolated provision.

4.

An appellate court's decision, including remand instructions, forms a part of its mandate to the lower court, which shall be controlling in the conduct of any further proceedings necessary in the district court.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 2, 2014. Appeal from Comanche District Court; E. LEIGH HOOD, judge. Opinion filed June 10, 2016. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed and remanded with directions.

*Carol M. Park*, of Glassman, Bird, Schwartz & Park, L.L.P., of Hays, argued the cause, and *John T. Bird*, of the same firm, was with her on the briefs for appellant.

*Charles H. Herd*, of Coldwater, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

*Per Curiam*: The heart of the dispute in this appeal, which arises in the context of a partition action, raises a question of the correct interpretation of a journal entry of judgment in a prior divorce proceeding. More specifically, the parties disagree about the effect of language in the journal entry granting the wife a percentage of the husband's

remainder interest in an inheritance, which consisted mostly of land and mineral interests. The district court determined the decree granted the wife a money judgment. On appeal from that decision, the Court of Appeals reviewed the judgment de novo and held the divorce decree granted the wife an interest in property. *Einsel v. Einsel*, No. 109,367, 2014 WL 1795993, at *2 (Kan. App. 2014) (unpublished opinion).

On petition for review the husband argues the Court of Appeals erred in applying a de novo standard of review and in interpreting the divorce decree as granting the wife an interest in real property. We disagree with his arguments, and, as we explain below, we affirm the Court of Appeals' ruling, although we issue slightly different remand instructions.

FACTUAL AND PROCEDURAL HISTORY

A. *Preliminary partition proceeding*

In January 2010, Carol Einsel filed a petition for partition in Comanche County District Court against her ex-husband, Rodney Einsel. Although Carol initially named several other members of the Einsel family as defendants, these parties were peripheral (and some were dismissed). Due to the shared surnames, we will refer to the parties by their first names in order to avoid confusion. All parties agree the dispute is really only between Carol and Rodney, and we will limit our recitation of the facts accordingly.

The ownership interests at stake in this case involved the Einsel family ranch—specifically, interests in 12 tracts of land in Comanche County (the surface rights), a total of 14 oil and gas wells in Comanche and Kiowa Counties (the mineral interests), and 3 tracts of land with mineral interests in Kiowa County. Carol alleged she had an ownership interest in certain surface and mineral interests that had previously been

3

enjoyed only by Rodney and his family. Her petition did not differentiate between the surface rights and mineral interests and instead asserted these rights were all owned in the following percentages: each of Rodney's two sisters, an undivided one-third; Rodney, an undivided 60% of one-third; and Carol, an undivided 40% of one-third. She requested an order specifying the parties' interests and directing partition pursuant to K.S.A. 60-1003; she later moved for payment of oil and gas proceeds from the 14 wells and the mineral interests in Kiowa County.

In his answer, Rodney explained that Carol's claim derived from a 1994 journal entry of divorce (the "divorce decree") in their earlier divorce proceedings, which had been filed and heard in Ellis County District Court. The judge presiding over the divorce had awarded Carol 40% of Rodney's remainder interest in the inheritance he received during the marriage. Rodney disputed whether he actually received any interest in his inheritance during his marriage to Carol; regardless, he also argued that the divorce decree did not award Carol an interest in real property. According to Rodney, partition was inappropriate because Carol's interest was limited to the *value* of Rodney's remainder interest on the date of the divorce decree. In response to Carol's motion for payment of oil and gas proceeds, Rodney explained he and his sisters actually owned a one-sixth interest in the Einsel real estate and mineral interests, not a one-third interest as Carol claimed.

The partition court denied as premature Carol's motion for payment of oil and gas proceeds, and it then scheduled a hearing and ordered briefing between the parties regarding Carol's ownership rights, if any, in the Einsel ranch and associated mineral interests. Essentially, the parties' disagreement at this point hinged on the nature of Carol's award in the divorce proceedings. Accordingly, we turn to the documents the parties submitted to the partition court regarding the divorce decree.

4

B. *Documents submitted to the partition court in advance of the hearing*

According to exhibits submitted by the parties, Carol and Rodney were married in May 1966. Rodney's father, Victor Einsel, died testate in April 1992; his will was admitted to probate in June 1992.

Carol and Rodney experienced marital difficulties, and in December 1992 (approximately 8 months after Victor's death), Carol petitioned for separate maintenance.

*Victor Einsel's estate*

In January 1993, the probate court entered a journal entry of final settlement on Victor's estate (the "probate order"). This probate order is relevant to the instant case because it defined what Victor owned at the time of his death and informed what Rodney could receive from Victor in inheritance. The probate order recounted that at the time of his death Victor owned an undivided one-half interest in the Einsel ranch in Comanche County (the surface rights) and also owned fractional interests in 14 oil and gas wells in Comanche and Kiowa Counties (the mineral interests). Victor also possessed a one-sixth or one-half interest in certain severed mineral interests in Comanche and Kiowa counties (the severed mineral interests). Victor held other property as a joint tenant in common with his wife, Anna Lou Einsel, and the probate court ruled that Victor's interest in this other property terminated upon his death, and full ownership devolved to Anna Lou as the surviving joint tenant.

*The divorce proceedings*

In June 1993, Rodney answered Carol's petition for separate maintenance and counterclaimed for divorce in Ellis County District Court. In a hearing before the divorce

court, Carol explained she was unemployed and had been unable to find work, was previously hospitalized due to emotional turmoil and had significant medical bills, had no means of support since Rodney stopped depositing money in their joint account, did not have reliable transportation, and was in need of funds.

In an October 1993 hearing, the divorce court asked the parties if there would be substantial arguments about the value of any assets. Carol responded that there was only one such issue—"[t]he value of remainder interests in [Victor's] estate, a sizable amount of land in the estate." Rodney agreed there was an immediate issue as to "what the nature of his interest in that land is, if any."

Prior to its final ruling, the divorce court received a valuation of Rodney's interest. According to the valuations, the Einsel ranch was valued at $892,680, and the royalty interests in Comanche and Kiowa Counties were worth $73,224, for a grand total of $965,904. Rodney owned a one-third remainder interest in one-half of this property (*i.e.*, the half owned by Victor at the time of his death), valued at $160,984. Using actuarial tables, Rodney's net remainder interest value as of January 1994 was $68,802.95.

The divorce court made its ruling in the divorce case in January 1994. The transcript of the final hearing shows the divorce court realized "there just isn't a lot of cash to go around" between Rodney and Carol. It recognized Carol was in "necessitate circumstances" and would likely remain that way despite her best efforts. Considering numerous factors, including employability and earning capacity, the divorce court awarded Carol $400 per month in alimony for 6 years.

The divorce court then turned to the "last remaining major issue," Rodney's "remainder interest in the property in [Comanche] County and the royalty interest in [Comanche] County and Kiowa County." It noted the parties had stipulated that the

present value of the property was $68,802.95. The divorce court acknowledged Rodney's argument that because he only received an interest in the property upon Victor's death, right around when he and Carol separated, Carol should receive none of it; it also noted Carol's position that she should receive all of it.

Ultimately, the divorce court concluded:

"[T]he fair thing to do here—even considering that this was obtained as a result of inheritance, rather than the 'efforts of the parties' is to allow [Carol] to have the following: I am going to give her forty percent of this remainder interest on the condition that [Rodney] has not paid her $22,500.00 within six months of today's date. That shall bear no interest. As I calculate it, 40% based upon this appraisal is $27,000.00 some dollars['] worth, therefore, [Rodney] can—if he feels that it is worth what the appraisal has listed it at—essentially can buy it back for less than the appraisal."

The divorce court issued a corresponding journal entry of divorce, in which it awarded Carol, *inter alia*:

"[F]orty percent (40%) of the remainder interest of the inheritance received by [Rodney] during the marriage, on the condition that [Rodney] may opt to pay [Carol] the sum of $22,500.00 within six (6) months of the date of hearing, in which case [Rodney] shall receive all of the remainder interest."

Rodney appealed, and in 1995 the Court of Appeals affirmed the divorce court's award to Carol—though it remanded for further findings of fact as to Rodney's income. *In re Marriage of Einsel*, No. 71,367, unpublished opinion filed May 12, 1995.

7

*Anna Lou Einsel's estate*

The parties also submitted documents to the partition court showing that Rodney's mother, Anna Lou, died in October 2008, many years after the conclusion of the divorce proceedings. Her will was admitted to probate; her estate included her own undivided half interest in the Einsel ranch real estate, her undivided half interest in producing mineral rights in Comanche County, and her undivided whole interest in other tracts of land which she acquired as the surviving joint tenant to the land she and Victor owned.

C. *Arguments before the partition court*

Before the partition court, the parties primarily argued about the *nature* of Carol's award—was it an interest in a money judgment, as Rodney urged, or was it an interest in real property, as argued by Carol.

In Rodney's view, the divorce decree did not grant (or was incapable of granting) Carol an interest in Victor's estate at all—but, even assuming it did, her claim was limited to 40% of the *value* of Rodney's remainder interest. Rodney reasoned that if the divorce court intended to give Carol 40% outright it would not have set the buyback value of the property at issue at $22,500.

For her part, Carol argued the divorce decree gave her an interest in the Einsel ranch itself—an interest in real property. She, like Rodney, focused on the $22,500 buyback provision—but, in her view, this valuation did not indicate her award was a money judgment but instead merely allowed Rodney to choose how to allocate his risk. Namely, he could pay the $22,500 lump sum and reclaim his whole interest in real property but risk predeceasing his mother and never experiencing the benefit of his

8

remainder interest (*i.e.*, his interest would never become possessory). Or, he could not pay the lump sum and risk the property being worth more than $22,500 when Carol decided to foreclose on the interest.

Carol explained that now she had decided to foreclose on the interest: Anna Lou had passed away and Rodney's remainder interest had become a possessory interest—an interest in fee simple—and was subject to partition. She requested partition of the Einsel ranch as follows: Carol, 6.66%; Rodney, 10%; each of Rodney's two sisters, 16.66%; and Anna Lou's estate/trust, 50%. Carol acknowledged some of the severed mineral interests identified as part of Victor's estate had expired or were sold during Anna Lou's life tenancy; but, she noted, Victor's will required Anna Lou to use proceeds from such sales to invest and reinvest in real and personal property to be distributed to the remaindermen. Accordingly, she requested partition of the 14 wells as follows: Carol, 13.33%; Rodney, 20%; and each of Rodney's two sisters, 33.33%.

D. *Partition court's decision*

After receiving the parties' submitted documents and briefs, the partition court held a hearing in November 2012 expressly to resolve the issue of the proper interpretation of the Ellis County District Court's 1994 divorce decree. The partition court first agreed with Carol that the divorce decree clearly meant to award her *some* interest in Rodney's share of Victor's estate.

Looking at the submitted documents, the partition court paid particular attention to the valuations of Rodney's remainder interest that were provided to the divorce court. The partition court explained that $68,802.95 present interest value as of January 1994 established the value of Rodney's reminder interest that he received during the marriage—and the divorce decree gave Carol "40 percent of this figure," which would be

9

$27,521.18. The partition court thus concluded that the divorce decree gave Carol an interest in a money judgment in the amount of $27,521.18.

In the partition court's view, the buyback provision supported this interpretation: the buyback provision gave Rodney "an opportunity to purchase the full remainder interest back at a discount rate of $22,500, or just write out a $5,000 [approximate] discount if he did so within six months." Basically, the partition court explained, the divorce court was attempting to persuade Rodney to "pay a discounted lump sum to [Carol] so she would have a substantial sum of money to assist her with her immediate financial needs."

Accordingly, the partition court found that Carol's interest in Rodney's inheritance was $27,521.18; it granted her a judgment in this amount. It then declared Rodney owned 16.66% of the family ranch, each of his two sisters also owned 16.66%, and Anna Lou's estate/trust owned 50%. As for the mineral rights, Rodney owned 33.33% and each of his two sisters owned 33.33%.

At this point in the proceedings Carol pointed out that if the divorce decree was interpreted as providing her only a money judgment, the divorce court had not made any provision for interest as would have been required under Kansas law. The partition court reviewed the divorce decree and ruled Carol would not be awarded any interest stemming from Rodney's failure to pay her $22,500 within 6 months of the divorce court's order.

E. *Court of Appeals decision*

Carol appealed to the Court of Appeals and argued the partition court erred in interpreting the nature of her award under the divorce decree. She reasoned the transcript

of the divorce court's ruling clearly evidenced its intent to give her an interest in real property, even if this intent was not clear from the divorce decree alone.

In response, Rodney agreed the divorce decree, considered on its own, was insufficient to convey an interest in real property regarding the Einsel ranch. However, in his view, the divorce decree allowed Carol to receive $22,500 if Rodney paid within 6 months, and, if not, 40% of $68,802.95 (the present value of Rodney's remainder interest)—which, according to Rodney, bore the "hallmarks of a secured transaction." Rodney contended the terms and structure of the award supported the partition court's interpretation of the divorce decree, but, in any event, the balance of equities also supported the partition court's decision. The partition court knew the whole history of Victor's estate and Carol and Rodney's divorce. It also knew that a decision to partition the Einsel ranch would affect Rodney's family, and it was within the court's equitable powers to determine Carol had no fee simple interest in the property. Rodney also urged the Court of Appeals to consider the equitable mortgage doctrine and view Carol's award as a lien against Rodney's property subject to discharge once Rodney paid her what he owed.

Although the Court of Appeals did not specifically address Rodney's equitable mortgage argument, which he based on *Fuqua v. Hanson*, 222 Kan. 653, 567 P.2d 862 (1977), or his brief contention that Carol's award was a secured transaction, it implicitly rejected these theories by ruling that the divorce decree awarded Carol an interest in real property, not an interest in a money judgment. *Einsel,* 2014 WL 1795993, at *1-2. The panel ruled the divorce court "intended to award Carol an interest in real property, conditioned on Rodney's failure to pay her a lump sum of cash within 6 months of the order." *Einsel*, 2014 WL 1795993, at *2. In so doing, the Court of Appeals disagreed with both parties' positions that the court needed to look beyond the journal entry of divorce—the written journal entry was the controlling document and there was "no

11

indication . . . that [the judge in the divorce proceeding] intended the award to be a monetary judgment." *Einsel*, 2014 WL 1795993, at *2.

Under the Court of Appeals' interpretation, the journal entry of divorce gave Rodney "two alternatives from which to choose":  either he could pay a lump sum of $22,500 right away and then wait for Anna Lou to die before he could enjoy the benefit of that payment; or he could choose *not* to pay the lump sum and risk Carol's 40% share being worth more than $22,500 when his remainder interest became possessory upon Anna Lou's death. *Einsel*, 2014 WL 1795993, at *2. The Court of Appeals acknowledged it was clear the divorce court's order "was designed to benefit Carol no matter which option Rodney chose"—if Rodney paid $22,500 immediately or within 6 months, then Carol's immediate need for money would be satisfied; and if Rodney did not pay the $22,500 Carol would presumably have a larger benefit in the future, satisfying the equities of the situation involving the parties' different earning capacities. *Einsel*, 2014 WL 1795993, at *2. Since Rodney elected not to pay, the condition in the award was met and Carol was left with 40% of his remainder interest in real property—not a money judgment. 2014 WL 1795993, at *2. Accordingly, the Court of Appeals "[r]eversed and remanded with directions to grant Carol's request for partition as set forth in her petition." 2014 WL 1795993, at *3.

We granted Rodney's petition for review of the Court of Appeals' decision and have jurisdiction pursuant to K.S.A. 60-2101(b) ("The supreme court shall have jurisdiction to correct, modify, vacate or reverse any act, order or judgment of a district court or court of appeals in order to assure that any such act, order or judgment is just, legal and free of abuse.").

ANALYSIS

Rodney's petition for review raised five issues, which we have condensed into three: (1) What is the proper standard of review? (2) What did the divorce court award to Carol? and (3) What are the proper instructions on remand?

Before we resolve the parties' arguments, a brief overview of partition in Kansas helps place the parties' arguments in perspective. "Partition" refers to dividing up an estate or interest in real property into separate, distinct portions so that owners may own their pieces separately. See generally K.S.A. 60-1003. Parceling out an estate in this way may be desirable for any number of reasons—perhaps the owners wish to terminate their relationship or avoid the discord that so often comes with shared possession.

Once an owner/petitioner requests partition and the remaining owners/defendants answer, the district court shall make an order "specifying the interest of the respective parties and directing partition." K.S.A. 60-1003(c)(1). An order "directing partition" does not automatically carve up an estate: instead, it merely marks the start of the actual partition process. See K.S.A. 60-1003(c)(1).

After directing partition the district court shall appoint three commissioners; it is these commissioners, not the court, who partitions the property among the parties according to their respective interests. K.S.A. 60-1003(c)(2) (also setting forth procedures if partition is impracticable or manifestly injurious). Once the commissioners prepare their report for the court, any party may file exceptions. K.S.A. 60-1003(c)(3). After a hearing, the judge may approve, disapprove, or modify the commissioners' report as justice and equity might require. K.S.A. 60-1003(c)(3).

The district court's powers in partition proceedings are broad—once it obtains jurisdiction over the parties and the subject matter in the case, a district court has "full

13

power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests, or may refuse partition if the same would result in extraordinary hardship or oppression." K.S.A. 60-1003(d); see *Peterson v. Peterson*, 173 Kan. 636, 641, 251 P.2d 221 (1952) (asserting that a district court acting pursuant to this statute "has plenary power to determine the right, title and interest of the parties to the action"). Although a district court acting pursuant to its partition powers may not create new ownership interests, it may determine whether a particular party actually has an ownership interest. See *Jones v. Anderson*, 171 Kan. 430, 435, 233 P.2d 483 (1951) ("A partition action is particularly designed and suited to settle any and all rights of cotenants in and to the property involved. The district court in such a proceeding has full and complete power to adjudicate every legal and equitable right of the parties to the litigation.").

A district court possesses wide discretion in partition proceedings because such proceedings require use of the court's equitable powers, meaning its powers to make a fair and just division of property based on the circumstances of a particular case. See *Home-Stake Production Co. v. Tri-State Pipe Co.*, 197 Kan. 163, 167, 169-70, 415 P.2d 377 (1966); *Peterson*, 173 Kan. at 641 (noting that district courts involved in partition proceedings have "the same powers as were exercised by chancery courts under equity practice"); see also *Johnson v. Burns*, 160 Kan. 104, 111, 159 P.2d 812 (1945) ("Ordinarily where there is as wide a discretion reposed in a trial court as is reposed in it in partition actions we are reluctant to interpose our judgment for that of the trial court.").

With this brief overview, we turn to the issues at hand.

I.  DID THE COURT OF APPEALS ERR IN REVIEWING THE PARTITION COURT'S DECISION DE NOVO INSTEAD OF REVIEWING FOR ABUSE OF DISCRETION?

Rodney first argues a partition court wields plenary power and, as a result, the Court of Appeals should have applied an abuse of discretion standard of review rather than unlimited or de novo review. Carol, in her brief to the Court of Appeals, had advocated for de novo review.

Despite our repeated references to a district court's broad powers in partition proceedings, our caselaw does not suggest, as Rodney would have us conclude, that a district court's plenary powers are absolute and entirely beyond appellate review. See *Peterson*, 173 Kan. at 641 (concluding, despite the district court's plenary partition powers, that the district court had made a reversible error of law); see also *Johnson*, 160 Kan. at 111 (explaining the court is "ordinarily" reluctant to supplant the partition court's judgment because it possesses a wide "discretion"). Instead, an appellate court reviews a district court's exercise of powers in a partition proceeding under an abuse of discretion standard of review. See *Miller v. Miller*, 222 Kan. 317, 320, 564 P.2d 524 (1977), *abrogated in part on other grounds by Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382 (1978); *Sheets v. Simms*, 36 Kan. App. 2d 361, 362, 364, 138 P.3d 1249 (2006) (reviewing a partition decision for abuse of discretion).

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

15

The issue upon which this case turns is whether the journal entry of judgment in the Einsels' divorce proceeding granted Carol a money judgment rather than an ownership interest in property. The interpretation of a journal entry, like the interpretation of all written instruments, presents a question of law over which an appellate court exercises de novo, or unlimited, review. See *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, 719, 840 P.2d 1107 (1992) (construing a journal entry). Abuse of discretion review necessarily "'includes review to determine that the discretion was not guided by erroneous legal conclusions,'" in cases where the question is whether the district court abused its discretion by making an error of law. Likewise, "'[l]ittle turns . . . on whether we label [appellate] review of this particular question abuse of discretion or de novo.'" *State v. White*, 279 Kan. 326, 332, 109 P.3d 1199 (2005) (quoting *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 135 L. Ed. 2d 392 [1996]).

This is precisely the situation here: The district court's interpretation of the Einsels' divorce decree is a legal conclusion subject to de novo review by an appellate court. If the district court relied on an erroneous interpretation of that written instrument it would constitute an abuse of its discretion. Thus, the Court of Appeals applied the correct, de novo standard of review to the district court's legal conclusion. While the better practice might have been for the Court of Appeals to have started by recognizing the overarching abuse of discretion standard of review in partition proceedings, here there was no practical difference in jumping to de novo review of the partition court's interpretation of the journal entry of divorce. Any mistake of law on this point would qualify as an abuse of discretion. See *White*, 279 Kan. at 332; *Einsel*, 2014 WL 1795993, at *2.

Rodney's contention that Carol's claim was adjudicated on the facts and that the partition court fashioned an equitable ruling after considering these facts thus somewhat

16

misses the point: such conclusions would ordinarily be left in place out of deference to a partition court's wide discretion, see *Johnson*, 160 Kan. at 111. But in Carol's case these conclusions were in large part based on the partition court's interpretation of a journal entry of divorce—a legal question, see *White*, 279 Kan. at 332.

Accordingly, we hold the Court of Appeals applied the correct standard of review when reviewing the partition court's order.

II.   DID THE COURT OF APPEALS ERR IN IDENTIFYING THE NATURE OF CAROL EINSEL'S INTEREST AS ONE IN REAL PROPERTY, AS OPPOSED TO A MONEY JUDGMENT?

We now arrive at the heart of the case: what, exactly, did the divorce decree give to Carol? Rodney argues it was a monetary judgment, and he gives a plethora of reasons why the balance of equities supported the partition court's decision, including: (1) the divorce case was filed only 6 months after Victor Einsel died; (2) Rodney did not receive the land interest from Victor's estate until after the divorce was filed; (3) Carol did not contribute money or labor to the land at issue and had no family ties to the property; (4) Rodney's property interest was subject to his mother's life estate; (5) neither Carol nor Rodney had any significant assets as of the divorce; (6) Carol had immediate financial needs after the divorce; (7) Rodney did not have the ability to exercise the buyback provision in the journal entry of divorce and pay $22,500 to Carol within 6 months; (8) Rodney's mother was able to pay that $22,500 to Carol; and (9) Rodney's sisters' undivided interests in the family ranch could be lost in partition. Under Rodney's interpretation, the whole point of the divorce award was to provide for Carol's immediate needs, not to provide Carol with either a short-term lump payment *or* a long-term investment benefit.

17

Rodney further asserts that the unacknowledged "elephant in the room" is that Rodney's mother, Anna Lou, was supposed to be the one to pay Carol's $22,500 cash award—she had the resources, while Rodney did not, and the divorce court assumed that by collateralizing payment of the cash award with an interest in the Einsel family ranch, Anna Lou would pay out of fear that otherwise her family's future interests would be lost. Rodney argues this unacknowledged strategy is disturbing and, on its own, justifies an equitable intervention.

Rodney also renews his argument that the divorce court did not award Carol a fixed share of the land but rather employed a conditional transfer of a property interest to collateralize payment of a cash award—in other words, the divorce court set up Carol's award as a secured transaction.

As we mentioned above, the interpretation of a written instrument is a matter of law over which we exercise de novo review. *Steele*, 251 Kan. at 719; *Godfrey v. Chandley*, 248 Kan. 975, 977, 811 P.2d 1248 (1991) (permitting an appellate court to construe an instrument and determine its legal effect). The primary rule in interpreting written instruments is to ascertain the intent of the parties, and thus, in interpreting an order the primary rule is to ascertain the intent of the court. See, *e.g.*, *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002). "As a general rule, if the language of a written instrument is clear and can be carried out as written," the intent of the maker is made clear and "there is no room for rules of construction." See *Godfrey*, 248 Kan. at 977.

If the maker's intent is not clear, meaning we apply the rules of construction , we have explained:

18

"'In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. The meaning of a contract should always be ascertained by a consideration of all pertinent provisions and never be determined by critical analysis of a single or isolated provision.'" *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 749, 822 P.2d 64 (1991) (quoting *Garvey Center, Inc. v. Food Specialties, Inc.,* 214 Kan. 224, Syl. ¶ 3, 519 P.2d 646 [1974]).

Here, the Court of Appeals deemed the plain meaning of the divorce decree's language sufficient to discern the divorce court's intent. *Einsel*, 2014 WL 1795993, at *2; see *Godfrey*, 248 Kan. at 977. We agree.

The award to Carol in the divorce decree consists of three clauses:

Clause 1:     "forty percent (40%) of the remainder interest of the inheritance received by [Rodney] during the marriage,"

Clause 2:     "on the condition that [Rodney] may opt to pay [Carol] the sum of $22,500.00 within six (6) months of the date of hearing,"

Clause 3:     "in which case [Rodney] shall receive all of the remainder interest."

Significantly, the wording of the divorce decree's first clause does not award Carol 40% of the *value* of Rodney's remainder interest but rather 40% of Rodney's remainder interest itself:  "forty percent (40%) of the remainder interest of the inheritance received by [Rodney] during the marriage." See *Godfrey*, 248 Kan. at 977-78 (endorsing a four-corners approach to interpretation of a written instrument). Rodney's interest, inherited from Victor, was a remainder interest in real property—both the partition court and the Court of Appeals acknowledge this, and Rodney does not seriously contest it at this point.

19

In addition, all three clauses in the divorce decree, read together, clearly show the divorce court meant to give Carol an interest in real property. See *Arnold*, 249 Kan. at 749 (considering all pertinent provisions of a written instrument). Reading the first clause to provide Carol with only a money judgment is inconsistent with the remaining language and produces an unreasonable result. See *McHenry v. Smith*, 154 Kan. 528, 530-31, 119 P.2d 493 (1941) ("[C]onstruction should be given to a judgment as will give force and effect to every word of it, if possible, and make it as a whole consistent, effective and reasonable."). Namely, if Rodney exercised his rights under the second clause's buyback provision, he would then, under the third clause, "receive all of the remainder interest"— but if Rodney was to "receive" anything at all after giving Carol $22,500, he would be receiving Carol's *remainder interest in real property*. To see the award as giving Carol a money judgment would be unreasonable—there would be nothing for Rodney to "receive" after paying Carol the $22,500.

Even if we were to look beyond the journal entry of divorce, the parties' statements before the divorce court and the divorce court's statements during the final hearing support our interpretation. In the October 1993 hearing, for example, Carol stated there was only one big issue—"[t]he value of remainder interests *in* [*Victor's*] estate, a sizable amount of *land* in the estate." (Emphases added.) Rodney agreed there was an issue about "what the nature of his interest *in that land*" would be. (Emphasis added.) The divorce court, for its part, described Rodney's "remainder interest in the *property* . . . and the royalty interest" as the last major issue in the divorce; the divorce court also rejected Rodney's argument he had no present interest in the Einsel ranch or the 14 wells because it "underst[ood] exactly what a remainder interest is." (Emphasis added.)

We are not persuaded to the contrary by the partition court's justification for finding a money judgment. The partition court did not discuss the plain language of the divorce decree but instead focused on the fact that the divorce court had been presented

20

with evidence about the value of Rodney's interest. But the divorce decree itself did not mention this present value of Rodney's interest or what 40% of this value would be, and so the partition court's interpretation that Carol was awarded 40% of the *value* of Rodney's remainder interest seems tenuous. Additionally, we note the divorce decree proposed no timeline for Rodney to pay this supposed monetary judgment of 40% of the value of Rodney's remainder interest once 6 months had elapsed, did not provide for any interest on the sum, and did not even state when this supposed money judgment would be due. And, of course, if the divorce court meant to provide Carol with money, it could simply have ordered Rodney to pay Carol $22,500 or some other sum immediately or within a set time frame.

We are also unmoved by the equitable factors urged by Rodney. As we stated in our introduction to partition proceedings, the partition court's powers are not entirely unbounded. Equity comes into play when determining whether and to what extent partition is possible or just, but a district court cannot, in the name of equity, disregard legal ownership under an instrument of law like a journal entry of divorce. See, *e.g.*, K.S.A. 60-1003; *Miller,* 222 Kan. at 320 ("The trial courts necessarily exercise wide judicial discretion in partition actions, but that discretion is exercisable primarily in the area of making a fair and just division between the parties.").

Accordingly, we agree with the Court of Appeals' decision reversing the partition court's order. The divorce decree gave Carol an interest in real property, with the stipulation that Rodney could buy this interest back within 6 months for $22,500. He failed to do so, meaning Carol's interest in real property stands.

By virtue of reaching this conclusion, we need not spend much ink rejecting Rodney's hasty reference that the divorce decree set up Carol's award as a secured transaction. He has pointed to no evidence supporting this theory, and there is no

21

indication either the divorce court or the partition court viewed the divorce decree in this light. We also reject his theory that the divorce decree set up a lien or a mortgage in line with the equitable mortgage doctrine: the divorce decree made no mention of such conveyances and, as we have already explained, the divorce decree did not set forth a judgment amount or make any provision for interest. In short, we affirm our holding that the divorce decree gave Carol an interest in real property.

III. SHOULD THE COURT OF APPEALS' REMAND INSTRUCTIONS STAND?

Rodney raises two concerns with the Court of Appeals' remand instructions: First, they would impermissibly curtail the partition process; and second, the remand instructions force the district court to give Carol a higher percent interest in the Einsel estate than the divorce court initially awarded.

An appellate court's decision, including remand instructions, forms a part of its mandate to the lower court, which "shall be controlling in the conduct of any further proceedings necessary in the district court." K.S.A. 60-2106(c). Subject to some limited exceptions, a district court must carry the mandate into execution and "'cannot vary it, or examine it for any other purpose than execution; nor give any other or future relief; nor review it upon any matter decided on appeal, for error apparent; not intermeddle with it, further than to settle so much as has been remanded.'" *State v. Collier*, 263 Kan. 629, 636, 952 P.2d 1326 (1998) (quoting *Sibbald v. United States*, 37 U.S. [12 Pet.] 488, 492, 9 L. Ed. 1167 [1838]); see also *Huffman v. Saul Holdings Ltd. Partnership*, 262 F.3d 1128, 1133 (10th Cir. 2001) (recognizing certain well-established exceptions to the mandate rule, permitting the district court to depart from the mandate rule if blatant error would result in serious injustice).

22

Thus, what exactly the Court of Appeals ordered in its remand instructions can become an important issue of dispute between the parties. Whether a district court complied with a Court of Appeals mandate, and the proper interpretation of a mandate, are questions of law over which we exercise de novo review. *State v. Guder*, 293 Kan. 763, 765, 267 P.3d 751 (2012); see *United States v. Shipp*, 644 F.3d 1126, 1128 (10th Cir. 2011); see also *Collier*, 263 Kan. at 636 (explaining the mandate rule is really a subspecies of the law of the case doctrine).

Here, the Court of Appeals reversed and remanded the partition court's decision "with directions to grant Carol's request for partition as set forth in her petition." *Einsel*, 2014 WL 1795993, at *3. Rodney fears that upon receiving the Court of Appeals' instructions the district court would immediately issue a final order of partition, thus denying him an opportunity to show how partition would result in hardship. These fears are misplaced. As set forth in our partition statutes, an order directing partition marks the *beginning* of partition proceedings—following the Court of Appeals' instructions, the district court would direct partition, appoint commissioners, hear objections to the commissioners' report, and direct further proceedings if need be. See K.S.A. 60-1003(c)-(d). The parties would still be able to influence the partition court and resolve any grievances, and the partition court would still be able to exercise its considerable powers as a court of equity. We simply do not see a reasonable risk that the district court would misunderstand the Court of Appeals' instructions and jump straight to a final order of partition. To the extent ambiguity might have existed, we clarify that the district court should follow statutory partition procedures on remand.

We are sensitive, however, to Rodney's second point, which is that the Court of Appeals' remand instructions might prompt the district court to make an error regarding Carol's ownership rights. Even though the Court of Appeals correctly determined the

23

nature of Carol's interest as one in real property, the *extent* of that interest is a separate matter.

We recall the divorce decree gave Carol "forty percent (40%) of the remainder interest of the inheritance received by [Rodney] during the marriage." It seems to us that Carol has claimed different percentages in the Einsel estate at different times during the proceedings.

For example, Carol's petition stated that Rodney owned 60% of one-third of the *total* surface rights and mineral interests and that she owned 40% of one-third. Thus, Carol's petition for partition appeared to seek 40% of a one-third interest in *all* of the surface rights associated with the Einsel ranch, even though the divorce decree entitled her to only 40% of a one-third interest in Rodney's remainder interest at the time of his father's death, which was the remainder interest he inherited during his marriage to Carol. Yet at other times, such as in her brief to the district court, she claimed 40% of a one-third interest in *half* of the total surface rights. We see similar issues with her requests for her share in the mineral interests and severed mineral interests.

We think there is some question as to whether Carol's petition for partition requested 40% of what Rodney inherited *during the marriage* as a result of his father's death or instead requested 40% of Rodney's *current* surface rights, mineral interests, and severed mineral interests now that his mother has also passed. There is thus a real risk that the Court of Appeals' instructions to grant Carol's "request for partition as set forth in her petition" would result in the district court ascribing to Carol a higher percentage of ownership in the whole than she is entitled to. 2014 WL 1795993, at *3.

Accordingly, although we approve the Court of Appeals' conclusion regarding the nature of Carol's award—an interest in real property—we leave it to the district court to

consider, in the first instance, whether Carol's petition for partition accurately describes the extent of Rodney's property received through inheritance and, correspondingly, her ownership in that property. See K.S.A. 60-1003(c) (stating the partition court's first duty is to specify the interest of the parties and direct partition).

The judgment of the Court of Appeals reversing the district court is affirmed. The judgment of the district court is reversed and remanded with instructions.

STEGALL, J., not participating.
RENE S. YOUNG, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Young was appointed to hear case No. 109,367 vice Justice Stegall under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.