NOT DESIGNATED FOR PUBLICATION

No. 123,395

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of

LANAY COLENE WILLIAMS,
*Appellee*,

v.

EMMETT WILLIAMS JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; LINDA KIRBY, judge. Opinion filed September 16, 2022.
Affirmed.

*Christopher J. Vinduska*, of Klenda Austerman LLC, of Wichita, for appellant.

*Julia A. Leth-Perez*, of O'Hara & O'Hara LLC, of Wichita, for appellee.

Before WARNER, P.J., CLINE, J., and RACHEL L. PICKERING, District Judge, assigned.

WARNER, J.: Kansas child-support obligations largely derive from the parents' incomes. To ensure these incomes are accurate, Kansas law requires parents to disclose any material changes in circumstances that could affect the amount of child support due. If a parent does not make these disclosures in a timely manner, courts may impose sanctions—both to put the children in the financial situation they would have enjoyed had the parent disclosed and to deter future nondisclosure or concealment.

1

This case illustrates why such sanctions may be appropriate. Emmett Williams failed to disclose a substantial increase in income during 2015, 2016, and 2017. When this nondisclosure came to light, the district court imposed sanctions equal to what Emmett should have paid in child support during that time. In doing so, the district court employed an extended-income formula, as his income exceeded the amount addressed by the Kansas Child Support Guidelines income schedules.

Emmett appeals, challenging both the district court's ability to impose those sanctions and the legality of the specific sanctions themselves. But district courts have broad discretion to craft appropriate sanctions, and the sanctions here are both permissible and reasonable. We thus affirm the court's ruling.

FACTUAL AND PROCEDURAL HISTORY

Lanay and Emmett Williams divorced in June 2012. At that time, Emmett worked as a salesperson, earning approximately $9,140 per month, while Lanay earned approximately $3,030 per month. Because Lanay retained residential custody of their two children, the divorce decree required Emmett to pay $2,000 per month in child support.

In early 2018, Emmett began working at a surgical center. Between his salary and other income, he earned about $4,230 per month. In April, Emmett filed a motion to modify his child-support obligation due to this decrease in income. About the same time, Lanay moved to modify the parties' parenting time.

During discovery on Emmett's motion, Lanay learned that Emmett had held a different sales job from late 2015 through 2017. In that position, which was subject to a two-year contract, Emmett received a $400,000 bonus and a guaranteed minimum monthly commission of approximately $20,830. He earned $358,750 in 2015, $395,500 in 2016, and $170,450 in 2017—considerably more than what he had earned when the

2

parties divorced and considerably more than his child-support payment had been calculated to reflect. Emmett had not previously informed Lanay of these changes.

The district court held a series of hearings on Emmett's and Lanay's respective motions. At a hearing on August 28, 2018, Lanay and Emmett agreed to a new child-support amount. Emmett's counsel described this agreement at the hearing as involving "concessions . . . both ways regarding the parenting time issue and also regarding the motion to modify child support." The parties agreed that Emmett would continue to pay $2,000 per month to Lanay through September 1, 2018—three days after the hearing—and then his payment would be substantially reduced to reflect his current income. The parties also acknowledged that this change would reduce Emmett's proportional responsibility for the children's unreimbursed medical expenses. And Emmett agreed that Lanay could retain previous duplicate payments of $7,841.60.

During this hearing, the district court discussed the terms of the parties' agreement and memorialized that agreement into a court order. The court reserved consideration of one of Lanay's arguments—that Emmett was intentionally underemployed, and his prior income should thus be imputed to calculate his future support obligations—for a future hearing. There was no mention at this hearing or in the resulting order of sanctions.

After the August 2018 hearing, Lanay retained new counsel, and the case was reassigned to a different judge. The parties proceeded to litigate various other issues relating to parenting time that are not relevant to this appeal.

In February 2019, Lanay filed a motion captioned "Amended Motion for Review, to Impute [Emmett]'s Income for Child Support, for Sanctions, and for Attorney Fees." The motion primarily asserted—consistent with Lanay's position at the August 2018 hearing—that Emmett was intentionally underemployed and the court should impute Emmett's previous (and higher) income when calculating his current child-support

obligation. And the motion also noted that Emmett had not notified Lanay of his substantially higher income in 2015, 2016, and 2017 until after he filed his motion to reduce his child-support obligation in April 2018. The parties argued Lanay's motion at a hearing in April.

In May, the district court issued its initial ruling on the motion. The court denied Lanay's request to impute Emmett's past income to his current child-support obligation. But the court ordered that Emmett pay a sanction under Section V.B.2. of the Guidelines for his delay in disclosing his income from 2015, 2016, and 2017. (2022 Kan. S. Ct. R. at 132). The court's order did not determine the exact amount of this sanction; instead, the order directed the parties to calculate what Emmett's obligation would have been during 2015, 2016, and 2017 under the Guidelines' extended-income formula, and the sanction would reflect the difference between that amount and what Emmett had previously paid.

Emmett filed a motion to reconsider, correctly noting that the court's May 2019 order included a factual misstatement that Lanay did not have information relating to Emmett's income at the August 2018 hearing. (In reality, she had received that information in May 2018 during discovery on Emmett's motion to modify child support.) Emmett also argued that Lanay should be precluded from seeking a sanction now, based on the language of the August 2018 order or on preclusion principles. And Emmett characterized the court's sanctions as effectively retrospective child support, asserting that Lanay could not receive those child-support adjustments because she did not comply with certain filing and notice requirements for modifying child support.

The court held a hearing on Emmett's motion to reconsider and confirmed its earlier sanctions order. The court observed that the factual misstatement in its previous order did not alter its conclusion that sanctions were appropriate. To reach that conclusion, the court engaged in a "comprehensive review of the application of the law and the [G]uidelines to the facts."

4

In particular, the court noted that although the August 2018 order resolved the amount of child support owed through the end of 2018, Kansas courts have long recognized that child support is different from court-ordered sanctions. And nothing in the August 2018 order altered the court's authority to sanction a person's delay in disclosing material changes of income. To illustrate this point, the court pointed out that courts do not have jurisdiction to modify child-support payments that were previously due. Instead, Kansas law only allows the court to modify child-support obligations beginning at least a month after a party has moved to modify those obligations. This means that—as a result of Emmett's failure to disclose his higher income in 2015, 2016, and 2017 until May 2018—the court did not have the ability to modify those support obligations in August 2018 (or later). And the clear language of the August 2018 order indicated that it related to "amounts owed by either party to the other party for child support through June 26, 2018."

Emmett filed a second motion to reconsider. He now argued that using the extended-income formula would provide Lanay a windfall because the August 2018 order already paid Lanay more than what Emmett technically owed. He also asserted the court could not use the extended-income formula to calculate "other sanction[s]" because that section was reserved for attorney fees, and he claimed that the court failed to make adequate factual findings to support its ruling.

After yet another hearing, the court found that its sanctions award was reasonable and proper under the circumstances. After accounting for parenting credits and other amounts paid, the court ultimately ordered Emmett to pay $64,737.20 in sanctions, calculated using the extended-income formula and including $1,435 in attorney fees. Emmett appeals.

5

Kansas law requires courts in divorce cases to "make provisions for the support and education of [any] minor children." K.S.A. 2021 Supp. 23-3001(a). The amount of child support due is determined through applying the Guidelines. K.S.A. 2021 Supp. 23-3002(a). While this amount takes into account several circumstances, it is primarily based on the parents' incomes.

Once a court has ordered child support in a particular case, its discretion to modify the parties' child-support obligations is limited in at least two important ways. *First*, in the first three years after a court orders child support, that support cannot be altered unless there has been "a material change in circumstances." K.S.A. 2021 Supp. 23-3005(a); see also Guidelines § V. (2022 Kan. S. Ct. R. at 131) (providing guidance on change in circumstances). After three years have lapsed, this showing is not necessary. *Second*, and most notable for purposes of this case, the court may modify child-support obligations starting on the first day of the month following a party's modification request, but not before. K.S.A. 2021 Supp. 23-3005(b).

Because child support is calculated based on the parents' income and may only be modified after a party's request, Kansas law imposes an affirmative obligation on a parent to notify the other parent of "any change of financial circumstances including, but not necessarily limited to, income, work-related child care costs, and health insurance premiums." Guidelines § V.B.1. (2022 Kan. S. Ct. R. at 131). This duty to disclose a material change in circumstances is the "linchpin" of the Guidelines. *In re Marriage of Johnson*, 50 Kan. App. 2d 687, 697, 336 P.3d 330 (2014) (Powell, J., concurring), *rev. denied* 302 Kan. 1010 (2015).

In 2012, the Kansas Supreme Court revised the Guidelines to underscore a court's discretion to sanction someone who has failed to notify the other parent of a material

change of circumstances. 50 Kan. App. 2d at 692-93. The Guidelines now state that a court may order sanctions when a parent fails "to disclose a material change of circumstances, such as the understatement, overstatement, or concealment of financial information." Guidelines § V.B.2. (2022 Kan. S. Ct. R. at 132). In doing so, the court may impose a sanction based on "the dollar value of a party's failure to disclose"—often, but not necessarily, assessed in the form of a credit or an addition to future child support—and may "also adopt other sanctions." Guidelines § V.B.2. (2022 Kan. S. Ct. R. at 132).

Although a sanction for a failure to disclose financial information often may be calculated to reflect the child support that would have been paid with a timely notification, our caselaw emphasizes that child support and sanctions are "two separate issues." 50 Kan. App. 2d at 694. This means, for example, that even though "a child support modification can only be retroactive to a date at least [one] month after the date that the motion to modify was filed," sanctions for failing to disclose changes are not limited to this timeframe. 50 Kan. App. 2d at 693-94.

Emmett challenges the district court's sanctions order from several angles on appeal. But while his arguments are many, they fall into two broad categories. He asserts that the district court lacked the authority—for multiple reasons—to consider the sanctions issue at all after the court entered its August 2018 child-support order. And he claims that the specific sanctions imposed are unreasonable, unfair, and contrary to governing law. Disentangling these various assertions requires a discussion of the interplay between child-support obligations and sanctions under Kansas law. But after doing so, we conclude the district court had authority to sanction Emmett and that its sanctions were lawful and reasonable. We thus affirm the district court's judgment.

1. *The district court had authority to sanction Emmett for failing to disclose his change in income.*

Emmett first argues that the district court did not have authority to order him to pay sanctions at all. He asserts that the August 2018 order memorialized the parties' previous agreement to fully resolve all questions regarding child-support, which—he argues—includes any sanctions for his delay in disclosing his income in 2015, 2016, and 2017. He also asserts that Lanay's sanction request was barred by claim preclusion, as she could have requested sanctions while the parties were litigating Emmett's April 2018 motion to modify his support obligations.

1.1. *The August 2018 order did not address sanctions.*

Emmett primarily argues that the district court's sanctions are contrary to the court's August 2018 order, where the parties resolved all issues relating to past-due child support. But sanctions, as we have noted, are distinct from child support. And the August 2018 order does not address sanctions.

The August 2018 order memorialized the parties' agreement regarding Emmett's motion to modify child support. The parties' disagreement on appeal concerns the interaction between paragraphs 8 and 16 in that order:

> "8. Commencing January 1, 2019, and by the 1st day of each month thereafter, [Emmett]'s child support obligation shall be $1,118.00 per month, as referenced in the attached Child Support Worksheet attached hereto as Exhibit 'B', without a Line E.3 tax credit. Child support shall be paid to the Kansas Payment Center at the address listed below. The Court shall review the child support issue in January 2019.
> . . . .
> "16. The parties agree that the terms of this Agreed Order Regarding Child Support fully resolve any and all amounts owed by either party to the other party for child support through June 26, 2018."

Emmett asserts that the language in paragraph 16—that the order "fully resolve[d] any and all amounts owed by either party to the other party for child support through June 26, 2018"—shows that the August 2018 order intended to serve as a global settlement of all issues relating to the parties' child-support obligations. The only exception, Emmett notes, is the "'child support issue'" referenced in paragraph 8, which Emmett identifies as Lanay's request that Emmett's previous income should be imputed to determine his current child-support payments. The court specifically reserved this issue to be discussed at a future hearing.

The district court agreed that the "child support issue" in paragraph 8 referred to Lanay's imputed-income argument. But the court concluded that this finding did not limit the court's authority to sanction Emmett for failing to disclose his substantial changes in income, as the August 2018 order concerned *child support*, not *sanctions*. The court noted that there was "no reference to sanctions" in that order, "nor were sanctions mentioned at any time by the court or parties' counsel" at the August 2018 hearing.

As a brief aside, we question the underlying premise of Emmett's argument—that the parties could by agreement deprive the court of authority to order sanctions. Kansas law has long recognized that courts possess "inherent powers to sanction" when it is "'reasonably necessary for the administration of justice, provided these powers in no way contravene or are inconsistent with substantive statutory law.'" *Pener v. King*, 305 Kan. 1199, 1210, 391 P.3d 27 (2017). This sanction power extends to "conduct outside the litigation," including "'as a means of enforcing obedience to a law which the court is called on to administer.'" 305 Kan. at 1210. And this sanctioning authority is particularly important when coupled with parties' duties under the Guidelines to disclose material changes in their income. Neither Emmett nor Lanay has cited authority showing that parties may, by agreement, deprive a court of this inherent power.

We need not resolve this question here, however, because we agree with the district court that the August 2018 order did not intend to limit the court's authority to impose sanctions for Emmett's nondisclosure. That order only resolved Emmett's current child-support obligations. Child support and sanctions are "separate issues." *In re Marriage of Johnson*, 50 Kan. App. 2d at 694. And as the district court observed, the August 2018 order does not mention sanctions at all, nor did the parties address sanctions during the August hearing on that motion.

Emmett argues that even though the parties did not explicitly reference sanctions, we should nevertheless read into the August 2018 order an agreement by the parties to forego sanctions for Emmett's nondisclosure of his changes in income. He points out that if he would have disclosed the change during 2015, for example, his child-support payments likely would have changed. Thus, he asserts, sanctions under Section V.B.2. of the Guidelines are inextricably tied to child support.

We do not find this reasoning persuasive. While sanctions in this context certainly are related to Emmett's child-support obligations, the two issues have meaningful differences. Once the district court fixed the parties' respective child-support obligations in 2012, that order remained in effect until it was modified in August 2018. Until that time, Emmett was ordered to pay $2,000 in child support each month. The fact that he might have been required to pay more in child support had he disclosed his substantially higher income in 2015, 2016, and 2017 does not change—in the words of the August 2018 order—the "amounts owed by either party to the other party for child support through June 26, 2018." Sanctions under Section V.B.2. are a separate tool courts may use to address such delays.

Emmett also notes that the August 2018 order included additional payments that were not required by the Guidelines. He points out that under the August 2018 order, he continued to pay $2,000 per month until September 2018, even though the court could

10

have modified his obligation as of May 1, 2018. And he notes that he agreed that Lanay could retain $7,841.60 in duplicate payments. Emmett asserts that these payments were consideration for the parties' intended settlement of all matters relating to child support, including sanctions. But the transcript of the August 28, 2018, hearing shows that the parties' agreement related not to a request for sanctions, but to "the parenting time issue and also regarding the motion to modify child support."

The district court did not err when it found that the August 2018 order did not preclude a later sanction based on Emmett's nondisclosure.

### 1.2. *Res judicata does not apply.*

Emmett also argues that the principle of res judicata bars the imposition of sanctions, asserting Lanay should have sought sanctions *before* the August 2018 hearing and order. But this principle does not apply here.

Res judicata, also known as claim preclusion, is a common-law doctrine designed to prevent relitigating a final judgment. *In re Tax Appeal of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012). Based on this principle, courts may decline to consider a claim that was or "could have been raised" in a previous case that involved "the same parties" and resulted in "a final judgment on the merits." 293 Kan. at 777-78.

The district court found the August 2018 order was not a final judgment—and thus res judicata did not apply—because paragraph 8 left the imputed-income issue unresolved. We agree. That order arose from Emmett's April 2018 motion to modify his child-support obligations. But even though the court's order largely resolved the parties' dispute, it did not resolve every question relating to child support. Thus, it was not a final judgment. See *Kaelter v. Sokol*, 301 Kan. 247, 250, 340 P.3d 1210 (2015) (order was not a final decision when it "left unresolved [an] unreimbursed medical expenses issue").

11

Moreover, nothing in Kansas law indicates that a party must seek sanctions under Section V.B.2. of the Guidelines as soon as he or she becomes aware of a material change in income, or else lose that ability. Instead, the Guidelines recognize that a district court has broad discretion to impose sanctions under that section. As Judge Powell explained in his concurrence in *In re Marriage of Johnson*, "the whole purpose of the sanction provision is to provide an incentive for a party to disclose a material change in circumstance." 50 Kan. App. 2d at 697 (Powell, J., concurring). Imposing an arbitrary deadline for seeking those sanctions, as Emmett's res-judicata argument would effectively do, is inconsistent with this objective.

Thus, the district court correctly concluded that it had the authority—despite the previous August 2018 order modifying the parties' child-support obligations—to impose sanctions against Emmett for his failure to disclose his higher income in 2015, 2016, and 2017. We thus must consider whether the specific sanctions awarded in this case were permissible.

2. *The district court's sanctions were reasonable.*

Emmett next argues that the sanctions the district court ordered in this case were unreasonable and beyond what are permitted under Kansas law. He asserts that the court should not have relied on the extended-income formula under the Guidelines. And he brings several procedural challenges, claiming the court's reliance on the extended-income formula violated his due-process rights and was based on insufficient evidence. We do not find these arguments persuasive.

District courts—the courts most familiar with the parties' actions and the development of each case—have significant discretion to determine what sanctions are appropriate. Appellate courts will only disturb a sanction order, including an order of

12

sanctions under Section V.B.2. of the Guidelines, when a court has abused that broad discretion. *In re Marriage of Johnson*, 50 Kan. App. 2d 687, Syl. ¶ 3. This occurs when a judge issues a decision that is arbitrary, fanciful, or unreasonable—that is, if no reasonable person would adopt the court's view—or is based on a factual or legal error. *Einsel v. Einsel*, 304 Kan. 567, Syl. ¶ 1, 374 P.3d 612 (2016); *In re Marriage of Johnson*, 50 Kan. App. 2d at 691-92.

Emmett first argues that the district court should not have used the Guidelines' extended-income formula to calculate its sanctions award. Section V.B.2. of the Guidelines recognizes that a court may assess a sanction for a parent's violation of his or her duty to disclose a material change of circumstances—such as Emmett's significantly higher income in 2015, 2016, and 2017. A court's sanction under this section may be based on "the dollar value of a party's failure to disclose" or some other value the court finds appropriate under the circumstances. Guidelines § V.B.2. (2022 Kan. S. Ct. R. at 132); see *In re Marriage of Johnson*, 50 Kan. App. 2d at 694-95 (noting the court's discretion in crafting sanctions under this section). The Guidelines also state that a court "may" assess these sanctions as a credit or addition to the amount owed under existing child-support obligations. Guidelines § V.B.2. (2022 Kan. S. Ct. R. at 132).

Here, the district court determined the value of Emmett's failure to disclose by calculating essentially what he would have been required to pay had Lanay been aware of his income in 2015, 2016, and 2017. It did so using the Guidelines formula applicable when the parents' combined grossly monthly income exceeds $15,500. See Guidelines, Child Support Schedules, Appendix II; Guidelines § III.B.3. (2022 Kan. S. Ct. R. at 108, 144) (setting forth extended-income formula). This extended amount is not capped at a particular dollar amount, but rather is proportional to the parties' income. The court indicated that most of this amount would be treated as an "other sanction" under Section V.B.2. and thus would be assessed as a judgment against Emmett rather than an addition to his monthly child-support payment.

13

The parties do not dispute that Emmett and Lanay had a combined average monthly income in 2015, 2016, and 2017 that exceeded $15,500. Indeed, the record shows that Emmett's income alone exceeded that amount—often substantially—in those years. Emmett nevertheless argues that the district court should not have used the Guidelines' extended-income formula in this case because that formula is limited to determining child support, not assessing sanctions.

But this rationale would reward a parent's failure to disclose a material change in circumstances. Were we to adopt Emmett's proffered reasoning, the extended-income formula could apply to parents who complied with their disclosure obligations but not to parents who failed to disclose. This would undermine the purpose of sanctions—incentivizing disclosure. See *State v. Arnett*, 307 Kan. 648, 654, 413 P.3d 787 (2018) (courts interpret statutes to avoid unreasonable or absurd results). Under the circumstances of this case, the district court did not err when it employed the extended-income formula to calculate the financial harm from Emmett's failure to disclose his substantially higher income.

Emmett additionally asserts that the court erred when it used the extended-income formula as an "other sanction[]" under Section V.B.2. Citing Judge Powell's concurrence in *In re Marriage of Johnson*, Emmett argues that the "other sanction" should be limited to attorney fees. But contrary to Emmett's assertions, Judge Powell's opinion merely noted that "other sanctions" *could* include attorney fees. 50 Kan. App. 2d at 697 (Powell, J., concurring). The concurrence did not indicate that this provision can only be used for attorney-fee awards; nor does Section V.B.2. limit a district court's discretion in that manner. Rather, Judge Powell reasoned that sanctions under this section play both a restorative and deterrent role, making it costlier if a parent chooses not to disclose a material change. 50 Kan. App. 2d at 696-97 (Powell, J., concurring). The sanctions imposed by the district court here serve both aims.

Our reading shows that when the district court referred to the extended-income calculation as an "other sanction," it was referring to the manner in which the sanction would be imposed and collected. The court found that, rather than deducting some amount each month in addition to Emmett's child support, the sanction imposed would be a stand-alone judgment. This approach is reasonable, particularly given Emmett's reduced income at his current position.

Emmett's procedural challenges are similarly without merit. He first asserts that the court's sanction violated his right to due process under the law because he had no notice that he could be sanctioned using the extended-income formula before the district court's order to that effect or any opportunity to explain why this measure of sanction was inappropriate. See *In re Marriage of Fuller*, 52 Kan. App. 2d 721, Syl. ¶ 3, 371 P.3d 964 (2016) (procedural due process requires notice and the opportunity to be heard). Our review of the record shows that Emmett received both procedural protections.

It is true, as Emmett asserts in his briefs, that Lanay's February 2019 motion did not specifically request a sanction using the extended-income formula—it merely made a general request for "sanctions." The motion also did not include documents—a domestic-relations affidavit and a child-support worksheet—that would have been required if she were seeking a modification of child support using the extended-income formula. See Kansas Supreme Court Rule 139(e)(2) (2022 Kan. S. Ct. R. at 220). But this requirement only relates to modifications of child support, which are different from sanctions. And as we have noted, Kansas law recognizes that the district court has broad discretion to craft an appropriate sanction when a parent fails to disclose material changes in his or her income. Included within this discretion is the ability to order the parent to pay the value for which he or she would have been responsible with a timely disclosure. See Guidelines V.B.2. (2022 Kan. S. Ct. R. at 132). Thus, Emmett was aware that such a sanction was possible here, given his substantial income during 2015, 2016, and 2017.

But even if there were some initial defect in the notice provided by Lanay's original motion, this defect was cured in the process that followed. The district court's first sanction order, issued in May 2019, ordered the parties to submit paperwork showing what Emmett's support obligation would have been in 2015, 2016, and 2017 using the extended-income formula. Emmett requested reconsideration, asking for an opportunity to be heard on whether that formula was appropriate. The district court held a second hearing, conducted "a revised comprehensive review of the application of the law and the guidelines to the facts," and ultimately concluded sanctions were appropriate. Emmett then sought reconsideration again, and the court again held a hearing before denying his request. Finally, the parties each submitted worksheets calculating the sanction, and the court accepted Emmett's calculation. In short, Emmett had both notice of his potential sanction and the (repeated) opportunity for his position to heard before the amount of the sanction was finalized. See *In re Estate of Lentz*, 312 Kan. 490, 497, 499, 476 P.3d 1151 (2020).

For the first time on appeal, Emmett expands this due-process challenge, arguing the district court should have held an evidentiary hearing to determine what Emmett's child-support obligations would have been in 2015, 2016, and 2017 if Lanay and the court had been aware of his income at that time. He also asserts the district court should have made particularized factual findings as to why the extended-income formula was appropriate in this case.

Kansas courts have never required particularized findings in the context of sanctions. The fact that this sanction was calculated using the extended-income formula does not change this landscape. See *In re Marriage of Poggi*, No. 121,012, 2020 WL 5268841, at *5-6 (Kan. App. 2020) (unpublished opinion) (since Guidelines set forth extended-income formula, use of formula is not deviation requiring specific findings); *In*

16

*re Marriage of Madrigal*, No. 120,930, 2020 WL 4909822, at *5-6 (Kan. App. 2020) (unpublished opinion), *rev. denied* 312 Kan. 892 (2021).

And while a court may certainly hear evidence in deciding whether to use the extended-income formula, either to calculate child support or the sanction, Emmett never informed the district court such a hearing was necessary. Indeed, to the extent Emmett argued that certain payments should be deducted from the sanction amount, he had the opportunity to submit that documentation and calculation to the court. He did so, and the court adopted his calculation.

In his concurrence in *In re Marriage of Johnson*, Judge Powell explained the circumstances that sanctions under Section V.B.2. were designed to address:

> "[W]hen the Child Support Guidelines Committee and our Supreme Court approved this language, they meant, at a minimum, for a specific sanction to be equal to the benefit gained from a failure to disclose a material change in circumstance to be imposed should the district court deem a sanction to be warranted. . . . This makes sense; the whole purpose of the sanction provision is to provide an incentive for a party to disclose a material change in circumstance. Without the certainty that a sanction will be equal to the benefit gained from a failure to disclose, parties will always have an incentive to conceal material information and attempt to 'roll the dice' in court should their concealment be discovered." 50 Kan. App. 2d at 696-97 (Powell, J., concurring).

The facts of this case illustrate this point. Emmett earned more than $700,000 in additional income over the course of three years but did not disclose that change until well after any child-support modification was possible. The district court did not err when it sanctioned Emmett for his nondisclosure.

Affirmed.

17